**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MGM RESORTS INTERNATIONAL,<br>3600 Las Vegas Boulevard South,<br>Las Vegas, Nevada 89109<br><br>         Plaintiff,<br><br>  v.<br><br><br>THE FEDERAL TRADE COMMISSION, a<br>federal administrative agency,<br>600 Pennsylvania Avenue, NW<br>Washington DC 20580<br><br>and<br><br>LINA M. KHAN, in her official capacity as<br>Chair of the Federal Trade Commission,<br>600 Pennsylvania Avenue, NW<br>Washington DC 20580<br><br>        Defendants. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff MGM Resorts International ("MGM"), by and through its counsel, DLA Piper LLP (US), brings this Complaint for injunctive and declaratory relief against the Federal Trade Commission (the "FTC" or "Commission") and Lina M. Khan in her official capacity as Chair of the FTC (together with the FTC, "Defendants"). MGM alleges as follows:

### INTRODUCTION

1. The Due Process Clause of the Fifth Amendment affords parties subject to government enforcement actions a fair hearing before an impartial tribunal and guarantees them equal treatment under the law. MGM brings this case to challenge actions by the FTC and its Chair and FTC regulations that have deprived, and continue to deprive, MGM of these fundamental rights.

1

2.      This constitutional challenge has its roots in a widely publicized cyberattack against MGM in early September 2023.  As was widely reported at the time, the cyberattack forced MGM to temporarily run its business—which sprawls across dozens of properties in the United States and abroad and serves millions of customers—without the use of the IT systems that help make its casinos and resorts best-in-class.

3.      The attack cost MGM dearly.  Although MGM was eventually able to restore its IT systems, the aftershock of the cyberattack continues to reverberate months later, and MGM is cooperating with the Federal Bureau of Investigation ("FBI") to bring those responsible to justice.

4.      MGM's misfortune that day was compounded by the presence of a powerful public figure at its Las Vegas hotel during the attack.  According to press reports, FTC Chair Lina Khan and an unnamed senior aide were guests at one of MGM's Las Vegas properties during the attack and were inconvenienced by MGM's incapacitated IT systems.  Those reports claim that with no IT systems available to check Chair Khan into the hotel, an MGM employee asked her to write her credit card information on paper:

> When Khan and her staff got to the front of the line, an employee at the desk asked them to write down their credit card information on a piece of paper. As the leader of the federal agency that, among other things, ensures companies protect consumer data wrote down her details, Khan asked the worker: How exactly was MGM managing the data security around this situation? The desk agent shrugged and said he didn't know, according to a senior aide who was traveling with Khan and described the experience to Bloomberg as surreal.

Katrina Manson, *Lina Khan Got Stuck in the Fallout of the MGM Hack at Las Vegas*, BLOOMBERG, Sept. 15, 2023, https://www.bloomberg.com/news/articles/2023-09-15/mgm-was-hacked-and-lina-khan-had-to-write-her-credit-card-number-down-on-paper.

5.      Chair Khan's query to the desk clerk was soon followed up with a wide-reaching FTC investigation.  On January 25, 2024, Staff issued a Civil Investigative Demand ("CID") seeking a response to the unanswered question Chair Khan reportedly posed to the desk clerk that

day, and a great deal of additional information.  A true and correct copy of the CID Is attached hereto as **Exhibit 1**.

6.      FTC's purported legal justification for the CID is two financial services regulations, both of which are facially inapplicable to MGM.  On this basis, and a catchall invocation of Section 5 of the FTC Act, the FTC seeks to compel MGM to produce more than 100 categories of information.

7.      The voluminous requests posed by the CID closely track the events involving Chair Khan, with certain requests seemingly derived directly from Chair Khan's personal experience in transacting business with MGM during the attack.

8.      The Commission's CID aside, as might be expected following the widespread publicity about the attack—undoubtedly enhanced by the reporting about Chair Khan and her "senior aide"—MGM is now the target of private litigation.  Specifically, it is now a defendant in fifteen consumer class actions.

9.      As the most high-profile person involved in the events at issue—and the only such person widely identified by name in press reports—Chair Khan is both a potential civil plaintiff and a potential witness.

10.      On February 20, 2024, MGM moved under the Commission's Rules of Practice to quash or modify the CID (the "Petition to Quash").  The Petition to Quash identified a number of substantive issues with the CID, including its reliance on inapplicable financial services rules.  A true and correct copy of the Petition to Quash is attached hereto as **Exhibit 2**.

11.      Shortly thereafter, MGM filed a Petition to Disqualify or Recuse Chair Khan under the Fifth Amendment's Due Process Clause (the "Petition to Recuse"), given Chair Khan's personal involvement in the subject matter under investigation.  A true and correct copy of the

Petition to Recuse is attached hereto as **Exhibit 3**.

12.     On April 1, 2024, the Commission issued a single Order denying both MGM petitions (the "Order").  A true and correct copy of the Order is attached hereto as **Exhibit 4**.

13.     The Commission's Order unlawfully deprives MGM of its rights under the Fifth Amendment in several respects.

14.     The Order relies on the Commission's position that its Rules of Practice do not allow for recusal of Commissioners except from administrative litigation.  As a result, in cases like this one, the Commission refuses to entertain petitions to recuse Commissioners from other aspects of FTC proceedings, such as ruling on Petitions to Quash.  This categorial refusal to hear petitions to recuse or disqualify—even in extreme cases like this one—violates the Due Process Clause of the Fifth Amendment.

15.     The Order further stated that the Commission "would deny MGM's petition even if it were properly filed" because it believes Chair Khan's involvement in the events under investigation "is not legally significant."  Chair Khan's refusal to recuse, and the Commission's refusal to disqualify her, despite her personal involvement in the subject matter of the investigation, flies in the face of applicable case law and deprives MGM of its rights under the Fifth Amendment.

16.     These problems are compounded because, contrary to the FTC's own rules and internal policy, Chair Khan participated in the Commission's decision about whether to disqualify her.

17.     They were compounded further by the Commission's imposition of a patently impracticable 11-day deadline for MGM to comply with the massive CID following denial of its petitions.  Such a plainly unreasonable deadline has the effect of punishing MGM and chilling the

exercise of the FTC's administrative procedures to challenge CIDs.

18.     This pattern of unconstitutional conduct also affects the underlying CID.  The FTC's investitive authority is not limitless.  It may only conduct investigations pursuant to specific statutory grants of authority.  As alleged below, however, the CID to MGM was premised in large part on facially inapplicable rules without any attempt to delineate which portions of the CID relate to which purported sources of authority.

19.     It is fundamentally contrary to the Fifth Amendment's guarantees of due process and equal protection for the FTC to subject MGM to an investigation premised on regulatory provisions that are inapplicable on their face.

20.     MGM prays for injunctive and declaratory relief to put an end to these injustices.

## PARTIES

21.     Plaintiff MGM is a Delaware corporation, with its principal place of business at 3600 Las Vegas Boulevard South, Las Vegas, Nevada 89109.

22.     Defendant FTC is an independent administrative agency of the United States government established pursuant to 15 U.S.C. § 41.  Its headquarters are located at 600 Pennsylvania Avenue, NW, Washington, DC 20580.

23.     Defendant Lina Khan is the Chair of the FTC.  She is being sued in her official capacity.

## JURISDICTION AND VENUE

24.     This Action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

25.     Plaintiff's right to immediate judicial review in this Court with respect to

Defendants' alleged conduct is based on the Fifth Amendment of the U.S. Constitution, the Supreme Court's holdings in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023), the Administrative Procedure Act, 5 U.S.C. §§ 702, 704, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

26.     Venue is proper in this judicial district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

## FACTUAL BACKGROUND

### I.     Due Process and Equal Protection

27.     The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that no person "shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V.

28.     A fair trial in a fair tribunal is a basic requirement of due process.  This demands, at a bare minimum, that judges and administrative agency decisionmakers recuse or be disqualified if there is a probability of actual bias, or even an appearance or reasonable suspicion of unfairness.

29.     It is fundamental that both unfairness and the appearance of unfairness should be avoided.

30.     FTC commissioners, like Chair Khan, perform a quasi-judicial role.  And it is just as imperative for Commissioners to avoid even the appearance of unfairness as it is for federal judges.

31.     On information and belief, Chair Khan's personal knowledge and impressions of the case, gained through her prior involvement, may carry more weight with her than the parties' arguments and evidence presented to the Commission.

32.     Chair Khan's personal involvement in the facts under investigation create an

appearance of a conflict of interest, and upon information and belief, an actual conflict of interest.

33.      Due process requires that Chair Khan not be involved in Commission decisions regarding a matter in which she has a personal interest in the outcome.

34.      Furthermore, the Fifth Amendment's guarantee of due process includes a guarantee of equal protection under the law.

35.      Singling out MGM for disparate application of financial services regulations and subjecting MGM to an administrative investigation pursuant to facially inapplicable regulations deprives MGM of due process and equal protection.

**II.      The Cyberattack & Investigation**

36.      In early September 2023, MGM Resorts identified potentially suspicious activity in its IT environment.

37.      With the assistance of external cybersecurity experts, the Company promptly launched an investigation to determine the nature and scope of the activity.

38.      When MGM Resorts detected additional threat actor activity less than two days later, the Company notified the FBI about this issue.

39.      The Company promptly took steps to contain the attackers' activity, including shutting down certain systems voluntarily to protect its customer and employee information.  For the next two days, the Company continued to take steps to fight against the threat actor and prevent access to its systems.

40.      At that point, the threat actor deployed ransomware that encrypted certain of the Company's systems and MGM identified an automated ransom note from the threat actor, demanding payment in exchange for a decryption key.

41.      In accordance with law enforcement guidance on ransomware, the Company

refused to pay the intruder's ransom demand.

42.     Within four days of the onset of the cyberattack, through various containment efforts, MGM Resorts eradicated the threat actor from the Company's IT environment.

43.     The Company promptly issued a press release regarding the cybersecurity issue, and employed dark web monitoring, which has not uncovered any evidence that any MGM data from this incident has been posted on the dark web or any other forum and the threat actor has never provided a sample set of any MGM data.

44.     Throughout all of these events, MGM Resorts has fully cooperated and coordinated with the FBI in its efforts to identify and investigate the threat actor.  On information and belief, MGM's extensive cooperation with the FBI has assisted the FBI in successfully obtaining multiple search warrants and will hopefully lead to the arrests of these cybercriminals.

45.     As noted above, Chair Khan was personally affected by the cyberattack against MGM that is now the subject of the FTC investigation into MGM.  Indeed, thanks to national press coverage, she is far and away the most visible witness and potential plaintiff.

46.     Notwithstanding MGM's victimization and the substantial cost (financial and otherwise) MGM had already incurred, MGM offered to voluntarily provide pertinent policies and records to the FTC.  This offer notwithstanding, on January 25, 2024, FTC Staff issued a CID to MGM seeking reems of documents and information.

47.     The CID calls for the production of more than one hundred different categories of information and includes periods that long precede the September 2023 cyberattack.

48.     The requests for information posed by the CID also closely track the precise events involving Chair Khan, with certain requests seemingly derived directly from her personal experience in transacting business with MGM during the attack.  *See, e.g.* **Exhibit 1** at spec. 25

(requesting that MGM identify "any types of Personal Information" that MGM "collected or maintained with manual or contingency practices or procedures").

49.     Although the CID is clearly the result of Chair Khan's experience at one of MGM's Las Vegas properties, it was ostensibly issued to investigate MGM's compliance with the Standards for Safeguarding Customer Information Rule ("Safeguards Rule"), 16 C.F.R. § 314, and the Duties Regarding the Detecting, Prevention, and Mitigation of Identity Theft ("Red Flags Rule"), 16 C.F.R. § 681.1(d), and makes a catchall invocation of Section 5 of the FTC Act, 15 U.S.C. § 45.

50.     The Safeguards Rule and the Red Flags Rules are data privacy regulations issued by the FTC to make sure that financial institutions and certain types of credit-extending institutions take appropriate steps to protect sensitive consumer financial information from unauthorized disclosure.

51.     The FTC has never attempted to enforce the Safeguards Rule against a casino-resort operator like MGM.

52.     The FTC has never attempted to enforce the Red Flags Rule against a casino-resort operator like MGM.

53.     The FTC has never attempted to enforce the Safeguards Rule or the Red Flags Rule against a casino-resort operator like MGM because neither the Safeguards Rule nor the Red Flags Rule apply to a casino-resort operator like MGM as a general matter, or to MGM specifically.

54.     Neither the Safeguards Rule nor the Red Flags Rule apply to MGM because MGM is not a financial institution, nor does it have credit relationships with its customers.

55.     On February 20, 2024, MGM filed the Petition to Quash.

56.     In its Petition to Quash, MGM challenged various aspects of the CID, including the

application of the Safeguards Rule and the Red Flag Rule to MGM, as well as the CID's sweeping

overbreadth and requirement to produce information far afield from the cyberattack.

### III.   **Petition to Recuse**

57.     On March 15, 2024, MGM filed a Petition to Recuse or Disqualify Chair Khan (the

"Petition to Recuse") pursuant to the Fifth Amendment's Due Process Clause.

58.     In the Petition to Recuse, MGM argued that Chair Khan, as a witness to the

cyberattack and a potential beneficiary of any litigation resulting from the attack, was required by

the Due Process Clause to recuse herself from participating in the adjudication of the Petition to

Quash and any and all other Commission actions regarding its investigation into MGM.

59.     MGM's Petition to Recuse also cited a variety of other sources of ethical guidance,

each of which required Chair Khan's recusal.

60.     Specifically, MGM cited 28 U.S.C. § 455, which governs the recusal of federal

judges and bears directly on the circumstances of MGM's Petition to Recuse.  *See* 28 U.S.C. §

455; *see also In re Intel Corp*., 149 F.T.C. 1548, 1563 (2010) (applying 28 U.S.C. § 455 to recusal

request).  This statute requires that a judge recuse herself from "any proceeding in which [her]

impartiality might reasonably be questioned."  28 U.S.C. § 455(a).

61.     The statue further mandates recusal when the judge has "personal knowledge of

disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1), and where the

outcome of the proceeding might affect a judge's personal interest, 28 U.S.C. § 455(b)(4)

(requiring recusal where the judge "knows" that she "has a financial interest in the subject matter

in controversy . . . or any other interest that could be substantially affected by the outcome of the

proceeding").

62.     MGM's Petition to Recuse also cited the American Bar Association's Model Code

of Judicial Conduct ("Model Code"), which sets forth a standard for judicial recusal that is essentially identical to 28 U.S.C. § 455: recusal is required under the Model Code when the judge has "personal knowledge of facts that are in dispute in the proceeding, " Model Code, r. 2.11(A)(1); or, has a "more than a de minimis interest that could be substantially affected by the proceeding[.]" Model Code, r. 2.11(A)(2)(c). Disqualification is also required if the judge is likely to be a material witness in the proceeding. Model Code, r. 2.11(A)(2)(d).

63.     MGM also cited the FTC's own, publicly available new-employee ethical materials which state in no uncertain terms that "the number one thing to consider before starting at the FTC" is "do not work on matters that effect your own interest."  *See Welcome to the FTC! Let's talk ethics.*, Federal Trade Commission (Rev. Sept. 2022), *available at* https://www.ftc.gov/ system/files/ftc_gov/pdf/UD-ieo-for-new-ftc-employees.pdf (last accessed Mar. 6, 2024).

64.     This new-hire guidance is consistent with federal statutes and regulations—also cited in MGM's Petition to Recuse—that prohibit federal employees from acting in an official capacity in any matter which will have a "direct and predictable" effect on the employee's financial interests, regardless of whether the amount of any gain is known, and even if the dollar amount of such gain is "immaterial."  5 C.F.R. § 2655.402 (a),(b)(1)(ii) (citing 18 U.S.C. § 208(a)).

65.     The Commission did not address *any* of these sources of ethical authority, refusing to even *accept* the Petition to Recuse as a proper FTC filing, and effectively shielding itself and its Chair from accountability for conflicts that deprive MGM of its constitutional right to an impartial tribunal.

## IV.     Commission's Unconstitutional Refusal to Consider Requests for Recusal or Disqualification in Most Circumstances

66.     As noted above, MGM filed its Petition to Recuse on March 15, 2024.

67.     MGM's Petition to Recuse was brought pursuant to the Fifth Amendment Due

Process Clause.

68.   The Commission's Rules of Practice are administrative regulations governing practice before the Commission.

69.   Rule 4.17 "applies to all motions seeking the disqualification of a Commissioner from any adjudicative or rulemaking proceeding."  16 C.F.R. § 4.17.

70.   Rule 4.17 states that, "[w]henever any participant in a proceeding shall deem a Commissioner for any reason to be disqualified from participation in that proceeding, such participant may file with the Secretary a motion to the Commission to disqualify the Commissioner."  *Id.* § 4.17(b)(1).

71.   Although MGM did not cite FTC Rule of Practice 4.17, the Commission nevertheless treated the petition as being filed under that Rule.

72.   Although Rule 4.17 is broadly drafted, the Commission takes an extremely narrow view of its application: it is the Commission's position that Rule 4.17(a) applies *only* after the Commission initiates in-house legal proceedings pursuant to Section 5(b) of the FTC Act.

73.   In other words, the Commission construes Rule 4.17 to mean that the subject of an investigation *cannot* challenge the participation of a commissioner in the many acts that precede the initiation of Section 5(b) proceedings—such as the issuance of a civil investigative demand, adjudicating a motion to quash or modify, or even issuing a complaint in the initial instance.

74.   On this basis, the Commission actually *rejects for filing* petitions filed in pre-complaint cases like the one that MGM filed.  And, indeed, that is precisely what happened to MGM.

75.   On April 1, 2024, the Commission issued the Order—in which Chair Khan participated—denying MGM's Petition to Quash the CID.

76.     The final footnote of the Order addressed MGM's Petition to Recuse, disclosing the rejection for the first time.  The Order tersely noted that MGM's Petition to Recuse had been rejected for filing by the Commission's Office of the Secretary as "not compliant" with Rule 4.17. Moreover, the Order asserted that had the filing been "properly" filed under Rule 4.17 (although under the logic of the FTC's rejection of the petition, there was no way to "properly" file a recusal request at this juncture), the FTC would have denied it – for reasons set forth in a few sentences in the footnote.

77.     By rejecting MGM's Petition to Recuse instead of ruling upon it, the Commission was able to shield itself from any accountability for Chair Khan's ethical conflicts.

78.     The Secretary, who acts at the behest of the Commissioners, considered the Petition to Recuse to be "not compliant" with Rule 4.17 by operation of the Commission's policy and practice of allowing petitions to recuse or disqualify *only* in cases in which the Commission has already initiated proceedings pursuant to Section 5(b) of the FTC Act.

79.     The FTC's blanket refusal to hear petitions to disqualify in cases outside the context of Section 5(b) proceedings violates the Due Process rights of the subjects of investigations, like MGM, because it deprives them of their right to a fair and impartial tribunal.

80.     By refusing to even accept petitions to recuse for any Commission actions other than Section 5(b) proceedings, the Commission has in this case—and, upon information and belief, many others—denied MGM and others similarly facing lengthy, costly, and resource-intensive investigations any ability to challenge the propriety of the participation of the Commissioners overseeing that investigation.

## V.      The Commission and Chair Khan's Unconstitutional Alternative Decision Not to Recuse or Disqualify

81.     The Commission's speculation in the footnote that it "would have" rejected the

Petition to Recuse, after the Secretary had already rejected the filing of the Petition under the Commission's Rules, cannot cure this constitutional defect, because in fact the Secretary's rejection of the Petition meant that granting the relief requested was not possible.

82.     The Commission's speculation that it "would have" denied the petition had the Secretary not rejected its filing is a transparent attempt to immunize the FTC's conduct and processes from appropriate scrutiny under the Due Process Clause.

83.     No other organ of the federal government is permitted to wield its in-house rules to immunize itself so thoroughly from accountability for ethical conflicts—not even Article III judges, who enjoy *lifetime* tenure.  *See* 28 U.S.C. § 455(a), (b)(1) (requiring "[a]ny justice, judge, or magistrate of the United States" to recuse herself where she has "personal knowledge of disputed evidentiary facts concerning the proceeding").

84.     Worse, the Commission allowed Chair Khan to participate in the decision on the Petition to Recuse, in violation of Rule of Practice 4.17(b)(3)(ii), which vests final authority on such a petition with the full Commission less the conflicted commissioner.

85.     MGM knows this because the last line of the FTC's decision indicates that the decision was "[b]y the Commission, Commissioner Holyoak not participating," indicating that Chair Khan participated in the Commission's decision to reject the recusal petition, contrary to the express requirements of the very Rule that the FTC relied upon to reject the Petition.

86.     Chair Khan's refusal to recuse, and the Commission's failure to disqualify her, under the specific facts of this case deprived, and continues to deprive, MGM of its rights under the Due Process Clause of the Fifth Amendment.

**VI.     The Commission's Unconstitutional Arbitrary Imposition of an 11-Day Deadline for Compliance with the CID.**

87.     On April 4, 2024, the Commission notified MGM that its compliance with the CID

was due on April 15, 2024, subject to FTC staff's unilateral authority to grant or deny extensions.

88.     The Commission's unilateral imposition of an impossibly short 11-day deadline for compliance following its denial of MGM's petitions also deprived MGM of due process. Considering the scope of the CID and the enormous burden of complying, this effectively punishes MGM for availing itself of mandatory administrative remedies.  It sends a chilling message to subjects of FTC investigations: "challenge us at your peril."  This is incompatible with due process.

89.     The Commission's blanket delegation to FTC Staff of authority to modify that deadline in their sole discretion does not cure this infirmity.  FTC Staff are highly competent and well-intentioned public servants, but the Commission's Order unfairly places Staff in a position of having to enforce a patently unfair and impracticable deadline, or alternatively, arbitrarily modify that deadline without reference to any governing standard known to MGM.  This deprives MGM of due process and equal protection.

## VII.   The Commission's Unconstitutional Reliance on Facially Inapplicable Regulations

90.     This pattern of unconstitutional conduct also affects the underlying CID.

91.     The FTC may conduct investigations for a proper purpose within the meaning of its statutory grants of authority.

92.     MGM is not now, and has never been, subject to the Safeguards Rule or the Red Flags Rule because MGM is not a financial institution, nor does it extend credit to its customers.

93.     More specifically, the Safeguards Rule applies only to "financial institutions," including traditional financial institutions such as banks, and other companies who are "significantly engaged in financial activities, or significantly engaged in activities incidental to such financial activities." 16 C.F.R. § 314.2(h)(1).

94.     The Rule expressly excludes from the definition of "financial services" common

and informal retail practices that are designed for the convenience of customers, such as "lay away" and deferred payment plans, and the practice of allowing customers to "run a tab." *Id.* § 314.2(h)(3)(i), (iii).

95.    MGM does not now qualify, and has never qualified, as a "financial institution" such that it could be subject to the Safeguards Rule.

96.    The Red Flags Rule applies to traditional financial institutions and to "creditors" as defined by its authorizing statute.  15 U.S.C. § 1681m(e)(4).

97.    A "creditor" as defined by the statute includes a company that "regularly" and "in the ordinary course of business" advances funds to consumers or uses consumer credit reports to make such credit decisions.

98.    Importantly, there is an express exemption in the Red Flags Rule's authorizing statute for a business that "advances funds on behalf of a person for expenses incidental to a service provided by the creditor to that person." *Id.* § 1681m(e)(4)(B).

99.    MGM does not qualify, and has never qualified, as a "creditor" or financial institution such that it could be subject to the Red Flags Rule.

100.    The inapplicability of the Rules is clear on their face.  This is not a close call.

101.    The FTC may not, consistent with due process and equal protection, rely upon facially inapplicable Rules to issue CIDs and conduct investigations.

102.    Nor is it constitutionally permissible for the FTC to rely upon a blanket, "catch all" assertion of authority under Section 5 of the FTC Act.

103.    Due process and equal protection require that the FTC rely upon clear, and clearly stated, authority before subjecting MGM and those similarly situated to the massive expense and burden of a far-reaching law enforcement investigation.

## COUNT I
### (Absence of Mechanism for Recusal or Disqualification Violates the Fifth Amendment)

104.    MGM restates and incorporates by reference each and every allegation of the preceding paragraphs.

105.    The FTC Rules of Practice provide no mechanism for parties subject to FTC proceedings to seek recusal or disqualification of Commissioners outside the narrow contexts of Section 5(b) adjudicative proceedings or administrative rulemaking.

106.    The Commission refuses to hear petitions seeking recusal or disqualification outside of those narrow contexts.  It will not consider requests for recusal or disqualification from adjudication of petitions to modify or quash CIDs.

107.    The Commission refused to hear MGM's Petition to Recuse or Disqualify Chair Khan on that basis.

108.    There is no other mechanism for an individual or entity subject to a Commission investigation to challenge ethical conflicts of the Commissioners, who otherwise act as the prosecutor, judge, and jury.

109.    By denying any means for individuals or entities subject to a Commission investigation, including MGM, to challenge the participation of one or more Commissioners, the Commission violates the Due Process Clause of the Fifth Amendment.

110.    The Commission's inadequate structure has caused and will continue to cause MGM to suffer immediate and irreparable harm.

111.    No money damages can remedy this harm, and MGM has no legal avenue by which to recover any money damages against the Commission.

## COUNT II
### (Failure to Recuse or Disqualify Violated MGM's Fifth Amendment Rights)

112.    MGM restates and incorporates by reference each and every allegation of the

preceding paragraphs.

113.    Chair Khan was personally involved in the incident under investigation by the FTC in its investigation of MGM.

114.    She is a high-profile potential witness, and a potential plaintiff.

115.    Her personal involvement creates an appearance of a conflict, and on information and belief, an actual conflict.

116.    Chair Khan's refusal to recuse, and the Commission's failure to disqualify her, from this FTC investigation, violated, and continues to violate, MGM's rights under the Due Process Clause of the Fifth Amendment.  It deprived and continues to deprive MGM of the right to have a neutral arbiter consider its Petition to Quash and Petition to Recuse.

117.    The Commission's conduct has caused and will continue to cause MGM to suffer immediate and irreparable harm to its Constitutional right to Due Process.

118.    No money damages can remedy this harm, and MGM has no legal avenue by which to recover any money damages against the Commission.

**COUNT III**
**(FTC's Deadline Violated the Fifth Amendment)**

119.    MGM restates and incorporates by reference each and every allegation of the preceding paragraphs.

120.    Following entry of its Order denying MGM's petitions, the Commission gave MGM just 11 days to comply with the CID, subject to FTC staff's unilateral authority to grant or deny extensions.

121.    The 11-day deadline is arbitrary, and wholly impracticable considering the immense scope of the CID.  Combined with the Commission's blanket delegation to FTC Staff of authority to modify that deadline in their sole discretion without reference to any governing

standard, this deprives MGM of due process and equal protection.

122.    The Commission's conduct has caused and will continue to cause MGM to suffer immediate and irreparable harm to its Constitutional right to Due Process.

123.    No money damages can remedy this harm, and MGM has no legal avenue by which to recover any money damages against the Commission.

**COUNT IV**
**(Reliance on Facially Inapplicable Rules Violated the Fifth Amendment)**

124.    MGM restates and incorporates by reference each and every allegation of the preceding paragraphs.

125.    MGM is not now, and has never been, subject to the Safeguards Rule or the Red Flags Rule because MGM is not a financial institution, nor does it extend credit to its customers.

126.    The Commission relied on facially inapplicable financial services Rules to issue the CID to MGM.

127.    The Commission failed to delineate what portions of the CID, if any, are supposedly premised on the FTC's authority under Section 5 of the FTC Act rather than the facially inapplicable financial services Rules.

128.    The Commission's conduct has caused and will continue to cause MGM to suffer immediate and irreparable harm to its Fifth Amendment Rights.

129.    No money damages can remedy this harm, and MGM has no legal avenue by which to recover any money damages against the Commission.

**PRAYER FOR RELIEF**

**WHEREFORE**, MGM respectfully requests that this Court enter judgment in its favor and against the Commission and Chair Khan as follows:

a.    Permanently enjoin the Commission and Chair Khan from: enforcing the CID; and

19

conducting any investigation or matter against MGM related to the 2023 data breach absent the recusal or disqualification of Chair Khan;

b.     Declare unconstitutional: the Commission's Rules of Practice with respect to Petitions to Recuse Commissioners; the Commission's failure to consider MGM's Petition to Recuse; the Commission's failure to disqualify Chair Khan; Chair Khan's failure to recuse; the Commission's reliance on inapplicable rules to issue the CID; and the deadline to comply with the CID imposed by the Commission and its blanket delegation of authority to Staff with respect to the deadline;

c.     Declare that MGM is not subject to the Safeguards Rule;

d.     Declare that MGM is not subject to the Red Flags Rule;

e.     Order the Commission to rescind the CID, or alternatively, order the Commission to grant MGM a reasonable initial deadline for compliance and provide Staff and MGM reasonable guidance on obtaining extensions of that deadline;

f.     Award MGM its reasonable costs in bringing this action; and,

g.     Award such other and further relief the Court deems just and proper.


DATE: April 15, 2024                                    Respectfully submitted,

                                                       *Brian J. Boyle*
                                                       Brian J. Boyle (DC Bar No. 1765448)
                                                       DLA Piper LLP
                                                       500 8th St NW
                                                       Washington, DC 20004
                                                       (202) 799-4000
                                                       brian.boyle@us.dlapiper.com

                                                       Andrew B. Sacks (*pro hac* forthcoming)
                                                       DLA Piper LLP
                                                       701 Fifth Avenue, Suite 6900
                                                       Seattle, Washington 98104

(206) 839-4890
andrew.sacks@us.dlapiper.com

Brett M. Feldman (*pro hac* forthcoming)
DLA Piper LLP
1650 Market Street, Suite 5000
Philadelphia, PA 19103
(215) 656-3300
brett.feldman@us.dlapiper.com

*Counsel for Plaintiff MGM Resorts*
*International*