UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MGM RESORTS INTERNATIONAL,

Plaintiff,

v.

FEDERAL TRADE COMMISSION, et al.,

Defendants.

Civil Action No. 24-1066 (JDB)

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

    I.  The Commission's Investigative and Enforcement Authority............................... 3

    II.    The Commission's Investigation into MGM's Data Security Practices ........................... 4

    III.    MGM's Complaint.......................................................................................... 8

LEGAL STANDARDS ....................................................................................................... 8

ARGUMENT ...................................................................................................................... 9

    I.    This Court Lacks Subject Matter Jurisdiction Because Congress
        Channeled MGM's Claims Into the Act's Exclusive Judicial Review
        Scheme ..................................................................................................... 9

        A.    The Act Creates a Comprehensive and Exclusive Review Scheme...................... 10

        B.    MGM's Claims Fall Within the Act's Review Scheme........................................... 12

        C.    The *Axon* Exception for Challenges to an Agency's Constitutional
            Structure Is Inapplicable .......................................................................... 14

    II.    MGM's Complaint Fails to State a Claim Upon Which Relief Can be
        Granted .................................................................................................... 16

        A.    MGM's Complaint Fails to Identify a Cognizable Cause of Action...................... 16

            1.    MGM Has No Statutory Cause of Action...................................................... 17

            2.    MGM Has No Cause of Action Under the Fifth Amendment ........................ 20

        B.    MGM's Complaint Allegations Fail to State a Plausible Claim for
            Relief.................................................................................................... 22

            1.    MGM's Allegations Concerning the Commission Chair are
               Insufficient for a Claim of Potential Bias ................................................ 23

            2.    The Compliance Deadline is Not Unconstitutionally Arbitrary ................... 26

            3.    The Commission is entitled to investigate whether any of its
               regulations apply to MGM.......................................................................... 27

III.    Declaratory Relief Is Inappropriate ................................................................ 28

CONCLUSION ................................................................................................................ 32

# TABLE OF AUTHORITIES

**Cases**                                                                                                                            **Page**

*ACLU Found. of So. Cal. v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) ................................................... 9

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ................................................................ 17

*Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) .......................................................... 17

*American Motors Corp. v. FTC*, 601 F.2d 1329 (6th Cir. 1979) .................................................. 21

*Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018) ..............................................10, 11, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 9, 22

*Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151 (D.C. Cir. 1979) ..................................... 25

*Auer v. Robbins*, 519 U.S. 452 (1997) ...................................................................... 14

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) .......................................................... passim

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 22

*Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332 (10th Cir. 1984) .............................. 21

*Bellion Spirits, LLC v. United States*, 7 F.4th 1201 (D.C. Cir. 2021) .......................................... 18

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) ............................................................ 13

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................. 18, 19

*Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874 (8th Cir. 1977) ............................... 20, 21

*Bowles v. Russell*, 551 U.S. 205 (2007) .................................................................. 10

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ....................................................... 16

*Buntrock v. SEC*, 347 F.3d 995 (7th Cir. 2003) ........................................................... 30

*Bush v. Lucas*, 462 U.S. 367 (1983) ..................................................................... 21

*Center for Auto Safety v. NHTSA*, 452 F.3d 798 (D.C. Cir. 2006) ............................................ 20

**Cases (Cont'd)**                                                                                     **Page**

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ........................................................... 8, 9

*Committee on Judiciary of U.S. House of Representatives v. McGahn*,
973 F.3d 121 (D.C. Cir. 2020) ........................................................ 20, 21, 22

*Davis v. Passman,* 442 U.S. 228 (1979) ..................................................... 16

*EB5 Holdings, Inc. v. Jaddou*, Civ. A. No. 23-1180 (RC),
2024 WL 687945 (D.D.C. Feb. 20, 2024) ........................................... 18

*EEOC v. St. Francis Xavier Parochial Sch.*, 7 F.3d 621 (D.C. Cir. 1997) ............................... 9, 26

*Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1 (2012) ............................... 10, 11, 12, 13, 15

*Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594 (1950) ..................................... 20

*Fed. Law Enforcement Officers Ass'n v. Ahuja*, 62 F.4th 551 (D.C. Cir. 2023) .............. 10, 11, 12

*Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431 (9th Cir. 1975) ................................. 28

*Flete-Garcia v. United States*, Civ. A. No. 19-2547 (KBJ),
2019 WL 13522503 (D.D.C. Oct. 8, 2019) ........................................... 17

*Floersheim v. Engman*, 494 F.2d 949 (D.C. Cir. 1973) ................................................ 17, 18

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ........................... 12

*FTC v. Claire Furnace Co.*, 274 U.S. 160 (1927) .................................................. 21, 31

*FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001) ............................................. 27

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) .............................................. 19

*Galvin v. Del Toro*, 586 F. Supp. 3d 1 (D.D.C. 2022) .......................................... 9, 17, 26

*General Finance Corp. v. FTC*, 700 F.2d 366 (7th Cir. 1983) ................................. 18, 19, 21, 22

*Gibson v. Liberty Mut. Grp.*, 778 F. Supp. 2d 75 (D.D.C. 2011) .................................. 29

*Glenn v. Fay*, 222 F. Supp. 3d 31 (D.D.C. 2016) ................................................ 29

*Gov't Emps. Ins. Co. v. Rivas*, 573 F. Supp. 2d 12 (D.D.C. 2008) ................................ 30

**Cases (Cont'd)**                                                       **Page**

*Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976) .................................. 29, 30, 31

*Howfield, Inc. v. United States*, 409 F.2d 694 (9th Cir. 1969) .................................... 21

*In re Murchison*, 349 U.S. 133 (1955) ............................................................... 25

*Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19 (D.D.C. 2018) ...................................... 19

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015).............................................. 10, 12, 13, 14

*Kisor v. Wilkie*, 588 U.S. 558 (2019) ................................................................ 14

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
103 F.4th 748 (10th Cir. 2024).......................................................................... 15

*Loma Linda-Inland Consortium for Healthcare Education v. NLRB*,
No. 23-5096, 2023 WL 7294839 (D.C. Cir. May 25, 2023).............................. 15, 16

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ..................................................... 25

*Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*,
763 F.2d 1441 (D.C. Cir. 1985) ........................................................................ 17

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)....................................... 28

*Mitchell v. Christopher*, 996 F.2d 375 (D.C. Cir. 1993) ........................................ 14

*Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684 (D.C. Cir. 2015) ...................... 29, 30, 31

*Morgan Drexen, Inc. v. CFPB*, 979 F. Supp. 2d 104 (D.D.C. 2013) ................ 29, 30, 31

*Neitzke v. Williams*, 490 U.S. 319 (1989) ............................................................. 9

*Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017)................................ 20

*POM Wonderful LLC v. FTC*, 894 F. Supp. 2d 40 (D.D.C. 2012) ......................... 29, 30

*Reisman v. Caplin*, 375 U.S. 440 (1964)............................................................. 21

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*,
324 F.3d 726 (D.C. Cir. 2003) .......................................................................... 20

**Cases (Cont'd)** <span style="float:right">**Page**</span>

*Schieber v. United States*, 77 F.4th 806 (D.C. Cir. 2023) ............................................ 18

*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667 (1950) ..................................... 9

*Sledge v. District of Columbia*, 869 F. Supp. 2d 140 (D.D.C. 2012) .......................... 21

*Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018) ...................................... 19

*Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72 (D.D.C. 2009) .......................... 29, 30, 31

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ................................ 10, 11, 12

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ............................................. 21

*Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) .......................................... 16, 17, 20

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ............................................. 3

*Wearly v. FTC*, 616 F.2d 662 (3d Cir. 1980) ......................................................... 21

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609 (1973) ..................... 27

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ................................................ 28, 29

*XYZ Law Firm v. FTC*, 525 F. Supp. 1235 (N.D. Ga. 1981) ..................................... 28

*Zigler v. Abbasi*, 582 U.S. 120 (2017) ........................................................ 20, 21, 22

**Statutes & Regulations**

5 U.S.C.   § 557(b) .................................................................................... 11

§§ 701-706 ............................................................................................ 18

§ 702 ................................................................................................... 17

§ 703 ................................................................................................... 18

§ 704 ......................................................................................... 2, 17, 18, 20

12 U.S.C.  § 1843(k)(4)(A) .......................................................................... 5

**Statutes & Regulations (Cont'd)**                                                    **Page**

15 U.S.C.  § 45 ............................................................................ 4, 19, 27

§ 45(a) ...................................................................... 3, 12

§ 45(a)(2) ....................................................................... 3

§ 45(b) .................................................................. 3, 7, 11

§ 45(d) .......................................................................... 11

§ 45(l) ........................................................................... 11

§ 45(m) ......................................................................... 11

§ 45b(e)(1) .................................................................... 11

§ 46(a) ............................................................................ 3

§ 53(b) .................................................................. 3, 12, 19

§ 57b-1 ..................................................................... 3, 27

§ 57b-1(e) ....................................................................... 3

§ 57b-1(f) ....................................................................... 3

§ 57b-1(h) ...................................................................... 3

§ 78u(d) ........................................................................ 12

§ 78u-2 ......................................................................... 12

§ 78u-3 ......................................................................... 12

§ 78u-3(a) ..................................................................... 11

§§ 1681 *et seq.* .............................................................. 5

§ 1681a(r)(5) ................................................................... 5

§ 1681m(e)(4) ................................................................. 5

§ 1691a(d) ....................................................................... 5

**Statutes & Regulations (Cont'd)**                                       **Page**

15 U.S.C.  § 1691a(e) ................................................................................... 5

18 U.S.C.  § 208 ............................................................................................ 25

28 U.S.C.  § 1331 .......................................................................................... 10

          § 2201 .......................................................................................... 17

          § 2201(a) ...................................................................................... 17

30 U.S.C.  §§ 814-816 .................................................................................. 11

          § 826 ............................................................................................ 11

33 U.S.C.  § 921 ............................................................................................ 11

          § 932 ............................................................................................ 11

5 C.F.R.  § 2635.402 .................................................................................... 25

12 C.F.R.  § 225.86(a)(2)(v) ........................................................................... 5

16 C.F.R.  § 2.7 .............................................................................................. 13

          § 2.10 .......................................................................................... 13

          §§ 3.52-3.54 ............................................................................... 11

          § 4.14 .......................................................................................... 19

          § 4.17 .......................................................................... 7, 13, 22, 23

          § 4.17(a) ........................................................................................ 7

          pt. 314 ................................................................................ 4, 5, 13

          § 314.1(b) ...................................................................................... 5

          § 314.2(h)(1) ............................................................................ 5, 28

          § 681.1 ............................................................................... 4, 5, 13

          § 681.1(b)(5) ............................................................................ 5, 28

**Miscellaneous** <span style="float:right">**Page**</span>

Catalin Cimpanu,
   *A Hacker Is Selling Details Of 142 Million MGM Hotel Guests
   On The Dark Web*, ZDNET (July 13, 2020) ..................................................................... 4

MGM Resorts International,
   SEC Form 10-K for Fiscal Year Ended December 31, 2023 (Feb. 23, 2024).................... 4

Office of the Maine Attorney General,
   *Data Breach Notifications by BetMGM, LLC*, (Dec. 21, 2022)......................................... 4

Office of the Maine Attorney General,
   *Data Breach Notifications by MGM Resorts
   International* (October 5, 2023) ......................................................................................... 4

## INTRODUCTION

The Federal Trade Commission ("Commission") is investigating MGM Resorts International's ("MGM's") data security practices after three MGM data breaches exposed consumers' personal information. In aid of that investigation, the Commission issued MGM an administrative subpoena—known as a civil investigative demand (the "Demand")—seeking documents and information about MGM's data security procedures, past breaches, and any exposure of consumers' private information.

Simply put, MGM has refused to comply with the Demand. Instead, MGM preemptively sued the Commission for pre-enforcement declaratory relief. MGM's suit fails, however, both for lack of subject matter jurisdiction and for failure to state a claim for relief.

First, the Court lacks subject matter jurisdiction because Congress set forth in the Federal Trade Commission Act (the "Act") a comprehensive and exclusive scheme for judicial review of agency actions. Under that scheme, MGM may raise its claims only in a court of appeals following a final Commission cease and desist order, or in the Commission's enforcement petition currently before the U.S. District Court for the District of Nevada. Either way, this Court lacks jurisdiction to hear MGM's claims.

MGM is not aided by the Supreme Court's decision in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), which carved out a narrow exception to the Act's judicial review scheme. *Axon* held that courts may hear constitutional challenges outside that statutory scheme if, but only if, they concerned "fundamental, even existential" aspects of "the Commission's structure," and the challenges go "to the core of the [Commission's] existence." *Id*. at 175, 182, 189. MGM's claims all concern the scope and application of agency regulations and are nowhere near *Axon*'s exceedingly high threshold.

Second, MGM fails to invoke a cognizable cause of action or state a plausible claim for relief. The Declaratory Judgment Act does not supply an independent cause of action, and the Administrative Procedure Act ("APA") provides a cause to challenge only "final" agency actions. 5 U.S.C. § 704. MGM challenges no such actions.

Nor does the Constitution provide a cause of action here. Where Congress has provided adequate statutory means for a person's claims and remedies concerning agency action, a duplicate constitutional cause of action that evades statutory limits and requirements may not be judicially implied.

Further, MGM's complaint fails to allege a plausible claim for relief. Its claim that the Commission Chair should be disqualified from this matter ignores applicable legal standards and is grounded in an impermissibly tenuous allegation of potential bias—that the Commission Chair happened to stay at an MGM hotel shortly after MGM's most recent data breach and needed to provide her credit card information on paper. This threadbare allegation does not support a plausible claim for bias that would warrant disqualification.

MGM similarly fails to state a claim with its attacks on the deadline and scope of the Demand. The claim of an unfairly short deadline ignores the Demand's original thirty-day return date and the additional forty-seven days MGM gained while its petition to quash was pending before the Commission. It also fails to allege the Commission's refusal to grant an extension. In fact, when Commission staff contacted MGM to discuss compliance issues such as timing, MGM refused to engage in any such discussions. Likewise, MGM's claim that the Commission has grounded the Demand in "facially inapplicable" regulations, Compl. ¶¶ 126-27, overlooks settled and binding authorities holding that the Commission is entitled to investigate whether its regulations apply to particular entities or practices.

Finally, declaratory relief is inappropriate because the same issues here are pending in litigation elsewhere, and MGM's suit merely seeks to forestall the Commission's enforcement petition. MGM has a full opportunity to assert its claims and defenses in that enforcement petition.

## BACKGROUND

I.   <u>The Commission's Investigative and Enforcement Authority</u>

The Act prohibits "persons, partnerships, or corporations" from engaging in "unfair or deceptive acts or practices." 15 U.S.C. § 45(a). Congress "empowered and directed" the Commission "to prevent" these unlawful practices, *id*. § 45(a)(2), and thus authorized the agency "to investigate. . . any person, partnership or corporation engaged in or whose business affects commerce." *Id*. § 46(a). To fulfill this "continuing duty," the Commission "can investigate merely on suspicion that the law is being violated, or even just because it wants some assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 639, 642-43 (1950).

To aid the agency in conducting its investigations, the Act authorizes the issuance of civil investigative demands to "any person" who may have "any information" relevant to potential violations of the laws enforced by the Commission, including agency regulations. 15 U.S.C. § 57b-1. Demand recipients may petition the Commission to set aside or modify the demand. *Id*. § 57b-1(f). The Commission may compel compliance with a demand by filing a petition for enforcement in a federal district court, and any resulting enforcement order is subject to appeal. *Id*. §§ 57b-1(e), (h).

If, after concluding an investigation, the Commission has "reason to believe" that a law violation has occurred, or is about to occur, and that a law enforcement action is in the public interest, the agency may either commence an internal administrative proceeding or file an action in a federal district court to adjudicate the alleged law violations. 15 U.S.C. §§ 45(b), 53(b).

## II.     The Commission's Investigation into MGM's Data Security Practices

MGM is a publicly traded Delaware corporation and an operator of hotels, casinos, and other entertainment venues. Compl. ¶¶ 2, 21; *see also* MGM Resorts International, SEC Form 10-K for Fiscal Year Ended December 31, 2023 (Feb. 23, 2024), at 1; https://d18rn0p25nwr6d.cl-oudfront.net/CIK-0000789570/0bdee45b-c5c8-469d-94d0-d53c15e36e51.pdf.  MGM also offers global online gaming and sports betting through a subsidiary, LV Lion Holding Limited, and a joint venture, BetMGM, LLC. *Id*.

Following three publicly disclosed security breaches of MGM's online network between 2019 and September 2023, which reportedly exposed consumers' personal identifying information (*see e.g.,* Catalin Cimpanu, *A Hacker Is Selling Details Of 142 Million MGM Hotel Guests On The Dark Web*, ZDNET (July 13, 2020); Office of the Maine Attorney General, *Data Breach Notifications by BetMGM, LLC,* (Dec. 21, 2022); Office of the Maine Attorney General, *Data Breach Notifications by MGM Resorts International* (Oct. 5, 2023)), the Commission initiated a non-public investigation into whether MGM had engaged, or was engaging, in violations of the Act or relevant regulations. Specifically, the Commission investigation sought to determine whether MGM's data security practices complied with (1) Section 5 of the Act, 15 U.S.C. § 45; (2) the Federal Trade Commission regulation entitled "Standards for Safeguarding Customer Information"—commonly referred to as the "Safeguards Rule," 16 C.F.R. pt. 314; and (3) the Federal Trade Commission regulation entitled "Duties Regarding the Detection, Prevention, and Mitigation of Identity Theft"—commonly referred to as the "Red Flags Rule," 16 C.F.R. § 681.1. *See* Compl. Ex. 1 (ECF No.1-2), at 2.[1] The Commission investigation also sought to ascertain whether an action to recover monetary consumer redress would be in the public interest. *Id*.

---

[1]     The page numbers refer to the pagination of the ECF filing.

The Safeguards Rule requires "financial institutions" to maintain adequate safeguards to protect their customers' personal information. 16 C.F.R. pt. 314. It defines "financial institutions" as any "institution that is significantly engaged in financial activities, or significantly engaged in activities incidental to such financial activities." *Id*. § 314.2(h)(1). The term "financial activities" includes "[l]ending [or] exchanging" money, *id*.; 12 U.S.C. § 1843(k)(4)(A), as well as "check cash[ing] and wire transfer[ing]." 16 C.F.R. § 314.1(b); 12 C.F.R. § 225.86(a)(2)(v).

The Red Flags Rule requires "creditors" to implement identity theft prevention programs. 16 C.F.R. § 681.1. It defines "creditor" as "any person who regularly extends, renews, or continues credit," that "regularly and in the ordinary course of business" (i) "obtains or uses consumer reports, directly or indirectly, in connection with a credit transaction;" (ii) "furnishes information to consumer reporting agencies;" or (iii) "advances funds to or on behalf of a person, based on an obligation of the person to repay the funds or repayable from specific property pledged by or on behalf of the person." *Id*. § 681.1(b)(5) (citing 15 U.S.C. § 1681m(e)(4)); 15 U.S.C. § 1691a(e). As applicable here, the term "credit" refers to "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." *Id*. §§ 1681a(r)(5), 1691a(d).

In connection with that investigation, on January 25, 2024, the Commission issued to MGM the Demand seeking the production of documents and responses to interrogatories concerning MGM's data security procedures, past data breaches, and any potential exposure of consumers' private information. *See* Compl. Ex. 1 at 4-34.[2]

---

[2]     The Demand was issued pursuant to three Commission resolutions, authorizing the use of compulsory process to investigate acts or practices related to or in violation of (1) Consumer Privacy and Data Security, FTC File No. 182-3036 (March 14, 2019); (2) Title V of the Gramm-Leach-Bliley Act, Its Implementing Rules, and Section 5 of the FTC Act, FTC File No. 002-3284 (July 16, 2019); and (3) 15 U.S.C. §§ 1681 *et seq*., concerning duties for the detection, prevention, and mitigation of identity theft, FTC File No. 992-3120 (April 15, 1999). Compl. Ex. 1 at 31-34.

MGM responded by filing with the Commission a Petition to Quash or Limit the Demand. Compl. Ex. 2 (ECF No.1-3). MGM's petition challenged the application of the Commission's Safeguards Rule and Red Flags Rule to its practices and asked that the Demand be set aside in its entirety or modified to "strike all references to the Safeguards Rule and the Red Flags Rule, strike Specifications 8-53, which are implicitly premised on those rules, and otherwise reasonably tailor the" Demand. *Id.* at 5.

MGM followed its petition to quash with a separate petition to recuse or disqualify Commission Chair Lina Khan from participating in this matter entirely. *See* Compl. Ex. 3 (ECF No. 1-4). MGM claimed that Chair Khan was "personally affected" by MGM's September 2023 data breach and thus is "both a fact witness and a potential plaintiff" against MGM. *Id*. at 3. "Given this personal involvement," MGM argued, "due process demands that Chair Khan not participate in this case." *Id*.

The Commission denied both petitions. *See* Compl. Ex. 4 (ECF No. 1-5). The Commission explained first that the Commission "possesses the authority to investigate whether its jurisdiction extends to [MGM]," and that at any rate the Demand "seeks information relevant not only to whether the Commission rules were violated but also to whether MGM's data security practices constitute unfair or deceptive acts or practices that violate Section 5 of the [Federal Trade Commission] Act." *Id*. at 4. The Commission also explained why MGM's arguments against applying the Safeguards and Red Flags Rules to MGM were substantively unpersuasive. *Id*. at 5-9. As for reasonably tailoring the Demand, the Commission pointed out that Commission staff already had modified several of the Demand's specifications following discussions with MGM's counsel. Compl. Ex. 4 at 3.  Specifically, Commission staff agreed to modify Specifications 16(e), 18, 19(a), 19(b), 22(b), 22(p), 36, 46, and 53. *See* Compl. Ex. 2 at 69-72. In addition, Commission

staff agreed to limit the scope of information sought in Specifications 5(a), 22(c), 22(d), 22(u), 25, and 28, to customers located within the United States. *Id*. at 72.

The Commission then addressed MGM's separately filed petition to disqualify Chair Khan. *See* Compl. Ex. 4 (ECF No.1-5) at 16 n.18. The Commission noted first that MGM's filing was rejected by the Commission Office of the Secretary as non-compliant with Rule 4.17 of the Commission Rules of Practice, 16 C.F.R. § 4.17. *Id*.[3] The Commission nevertheless addressed MGM's arguments and explained that the Commission "would deny MGM's petition even if it were properly filed." *Id*. The Commission rejected MGM's argument that Chair Khan should be recused because of "pre-existing personal knowledge of the facts," noting that those facts "consist[ed] simply of knowing that a breach occurred, and that MGM's operations were disrupted, facts that have been widely reported in the news." *Id*. That Chair Khan "learned of the breach while an MGM hotel guest," the Commission noted, "is not legally significant and stands in stark contrast to cases MGM cite[d] as supporting recusal." *Id*. The Commission lastly noted that, to the extent Chair Khan had any personal interest arising from her MGM hotel stay, such as being a potential class action plaintiff (as MGM had suggested), "Chair Khan voluntarily elects to waive any interest that she may have in any relief resulting from the filed class actions or any substantially related matter—thus extinguishing any potential financial conflict arising from these actions." *Id*.

Following MGM's continued refusal to comply with the Demand, on June 17, 2024, the Commission filed a petition to enforce the Demand in the United States District Court for the District of Nevada, Petition to Enforce, *FTC v. MGM Resorts Int'l*, Civ. A. No. 24-1112 (D. Nev.

---

[3]     Rule 4.17 "applies to all motions seeking the disqualification of a Commissioner from any adjudicative or rulemaking proceeding." 16 C.F.R. § 4.17(a). Because the MGM investigation was still ongoing and the Commission had not yet determined whether even to commence an adjudicative proceeding by issuing an administrative complaint, *see* 15 U.S.C. § 45(b), application of Rule 4.17 had not been triggered.

June 17, 2024), ECF No. 2 (the "enforcement petition"). The enforcement petition against MGM remains pending.

### III.   <u>MGM's Complaint</u>

MGM filed this action on April 15, 2024. It alleges due process violations and seeks to enjoin enforcement of the Demand and to halt the Commission investigation "absent the recusal or disqualification of Chair Khan." Compl. at 20. Specifically, MGM claims that its due process rights were infringed by: (1) the absence of an agency mechanism for disqualification of commissioners outside the contexts covered by Commission Rule 4.17, *id*. at 17; (2) Chair Khan's refusal to recuse from the investigation and the Commission's decision not to disqualify her, *id*. at 17-18; (3) an "arbitrary and wholly impracticable" compliance deadline, *id*. at 18-19; and (4) the Demand's reliance on the Safeguards and Red Flags Rules, which MGM contends are "facially inapplicable," *id*. at 19.

In addition to injunctive relief, MGM seeks declarations that the Commission Rules of Practice are unconstitutional as to petitions to disqualify the Commissioners, and that MGM is subject to neither the Safeguards Rule nor the Red Flags Rule. *Id*. at 20. MGM also seeks an order requiring the Commission to rescind the Demand or, alternatively, grant MGM a "reasonable initial deadline for compliance." *Id*.

### LEGAL STANDARDS

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) tests this requirement: Plaintiffs must demonstrate that their lawsuit presents a real, not hypothetical, controversy that affects the plaintiff in a concrete manner and provides the factual predicate for reasoned adjudication. *Id*. at

101-02. This prerequisite must be satisfied regardless of the relief sought, including declaratory relief. *Skelly Oil Co. v. Phillips Petrol. Co.,* 339 U.S. 667, 671 (1950).

Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *accord Galvin v. Del Toro*, 586 F. Supp. 3d 1, 8 (D.D.C. 2022) (Bates, J.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A claim that fails as a matter of law, such as when lacking a cognizable cause of action, likewise "must be dismissed, without regard to whether it is based on an outlandish legal theory or a close but ultimately unavailing one." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"When considering a motion to dismiss the complaint, whether for lack of subject matter jurisdiction or for failure to state a claim," the court takes as true all well-pled factual allegations, "while also disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Galvin*, 586 F. Supp. 3d at 8, 9 (citing *ACLU Found. of So. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991)).

The Court "may consider materials outside the pleadings to determine whether it has subject-matter jurisdiction." *Galvin*, 586 F. Supp. 3d at 9. But a Rule 12(b)(6) motion "must be decided only based on 'the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice.'" *Id*. (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 7 F.3d 621, 624 (D.C. Cir. 1997)) (cleaned up).

## ARGUMENT

### I.    This Court Lacks Subject Matter Jurisdiction Because Congress Channeled MGM's Claims Into the Act's Exclusive Judicial Review Scheme

This Court lacks subject matter jurisdiction to entertain MGM's claims, warranting the complaint's dismissal entirely. "Within constitutional bounds, Congress decides what cases the

federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). Ordinarily, district courts may hear challenges to federal agency actions "arising under" federal law, pursuant to, for example, the general federal question statute, 28 U.S.C. § 1331. "Congress, though, may substitute for that district court authority an alternative scheme of review." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023); *accord Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023). *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012). "The method Congress typically chooses is the one used in . . . the Federal Trade Commission Act: review in a court of appeals following the agency's own review process." *Axon*, 598 U.S. at 185. "The agency effectively fills in for the district court, with the court of appeals providing judicial review." *Id*. Congress's "creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Id*. This principle applies equally to constitutional challenges to agency action. *Id*.; *accord Elgin*, 567 U.S. at 10; *Jarkesy v. SEC*, 803 F.3d 9, 19 (D.C. Cir. 2015).

The D.C. Circuit has articulated a two-part test for applying these principles: Congress is deemed to have intended "that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018) (quoting *Jarkesy*, 803 F.3d at 15). *Axon* reaffirmed the validity of this analytical framework. *See* 598 U.S. at 185-86. Both of these conditions are met here.

### A.    The Act Creates a Comprehensive and Exclusive Review Scheme.

"Congress need not expressly deem a statutory regime to be exclusive for it to satisfy step one." *Ahuja*, 62 F.4th at 558 (citing *Elgin*, 567 U.S. at 10-12); *see Axon*, 598 U.S. at 185 (statutory schemes for agency review "generally" are "exclusive") (cleaned up). "Congress's intent to

displace district court jurisdiction may be 'implied'—for instance, by the comprehensive nature of the statutory system of review and Congress's purpose in enacting it." *Ahuja*, 62 F.4th at 558.

As the Supreme Court recognized in *Axon*, Congress created just such an exclusive review scheme in the Act. 598 U.S. at 185. First, the Act sets out a comprehensive process for adjudicating claims at the agency level. It allows respondents to present evidence and to challenge the charges against them at a hearing before an administrative law judge. 15 U.S.C. § 45(b). Respondents can appeal any adverse administrative law judge decision to the Commission. *See* 5 U.S.C. § 557(b); 16 C.F.R. §§ 3.52–3.54. And final cease-and-desist orders permit respondents to pursue direct judicial review in a court of appeals. 15 U.S.C. § 45(b). The Act expressly makes court of appeals jurisdiction over challenges to Commission final orders—whether constitutional or otherwise—"exclusive." 15 U.S.C. § 45(d). This is exactly the sort of scheme that courts have found to provide an exclusive path to judicial review. *See, e.g.*, *Axon*, 598 U.S. at 185 (the Federal Trade Commission Act and the Exchange Act, 15 U.S.C. § 78u-3(a)); *Thunder Basin*, 510 U.S. at 207-16 (the Mine Act, 30 U.S.C. §§ 814-816, 826); *Arch Coal*, 888 F.3d at 496–500 (the Black Lung Benefits Act, 33 U.S.C. §§ 921, 932).

Further, the Act provides for district court (not administrative) adjudication in two special circumstances—not applicable here—depending on the nature of the claim. *See* 15 U.S.C. §§ 45(*l*), 45(m) (actions for civil penalties), 45b(e)(1) (States' *parens patriae* challenges to form contracts impeding consumer reviews). Congress's authorization of district court review for certain types of claims "demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of a [] . . . claim," but that it "intended no such exception" for all other claims. *Elgin*, 567 U.S. at 13; *see Arch Coal*, 888 F.3d at 499-500 (statute's express grant of district court jurisdiction "in only two narrow circumstances" "leaves no role for district court review of [other claims]").

Finally, it does not alter the analysis above that the Commission, at its discretion, can enforce the Act either by initiating inhouse administrative proceedings, 15 U.S.C. § 45(a)-(b), or by bringing an action in a district court, *id*. § 53(b). The Exchange Act grants the Securities and Exchange Commission the exact same enforcement discretion, *see* 15 U.S.C. §§ 78u(d), 78u-2, 78u-3, and the D.C. Circuit, in reviewing that agency's judicial review scheme, emphasized that "Congress granted the choice of forum to the Commission," noting that "that authority could be for naught if respondents [in administrative proceedings] could countermand the Commission's choice by filing a court action." *Jarkesy*, 803 F.3d at 17.

### B.    MGM's Claims Fall Within the Act's Review Scheme.

The second condition for divesting district courts of jurisdiction—that the litigant's claims be of the type that Congress intended to be reviewed within the statutory structure, *Arch Coal*, 888 F.3d at 498—is also met here. The Supreme Court has identified "three considerations designed to aid in that inquiry, commonly known now as the *Thunder Basin* factors." *Axon*, 598 U.S. at 186. Those are (1) whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim; (2) whether the claim at issue is "wholly collateral" to the statutory review provisions; and (3) whether the claim is "outside the agency's expertise." *Id*. (quoting *Thunder Basin*, 510 U.S. at 212-213); *accord Ahuja*, 62 F.4th at 560; *Arch Coal*, 888 F.3d at 500. "A claim will be found to fall outside the scope of" the statutory scheme "in only [the] limited circumstances" when the *Thunder Basin* conditions are *all* satisfied. *Arch Coal*, 888 F.3d at 500; *see also Axon*, 598 U.S. at 186 ("When the answer to all three questions is yes, 'we presume that Congress does not intend to limit jurisdiction'") (quoting *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010)).

MGM's claims do not fall outside the Act's review scheme because they satisfy none of those requirements—much less all three. *First*, meaningful judicial review of MGM's claims is

available within the Act's review scheme. All of MGM's claims pertain to whether the Commission's rules (or lack thereof) violate MGM's constitutional right to due process. *See* Compl. ¶¶ 104-129. There is no doubt that—should the Commission proceed with an administrative enforcement proceeding against MGM (or with a court action, as it already has done in the enforcement petition now pending in Nevada), and should MGM not prevail in such action— MGM can raise all of its due process claims before the court of appeals reviewing such action, which is "fully competent to adjudicate" those claims. *Elgin*, 567 U.S. at 17. Indeed, even facial constitutional challenges to agency actions (more so, MGM's "as applied" claims) should be routed via the statutory review scheme, "so long as a court can eventually pass upon the challenge." *Jarkesy*, 803 F.3d at 18 (citing *Elgin*). Meaningful judicial review of MGM's claims—"the most important factor in the *Thunder Basin* analysis," *Bennett v. SEC*, 844 F.3d 174, 183 n.7 (4th Cir. 2016)—is thus plainly available.

*Second*, MGM's due process claims are not "wholly collateral" to the Act's review scheme. *Axon*, 598 U.S. at 186. All of MGM's claims concern the scope and proper application of the Commission's regulations: Rule 4.17 of the Commission's Rules of Practice, 16 C.F.R. § 4.17, governing the disqualification of commissioners, *see* Compl. ¶¶ 66-86, 104-118; Rules 2.7(b) and 2.10, 16 C.F.R. §§ 2.7, 2.10, concerning the use of civil investigative demands and petitions to limit or quash those demands, *see* Compl. ¶¶ 87-89, 119-123; and the Safeguards and Red Flags Rules, 16 C.F.R. pt. 314, § 681.1, *see* Compl. ¶¶ 90-103, 124-129. Those claims, on their face, "concern (what [MGM] perceives to be) substantive or procedural deficiencies in the Commission's [law] enforcement" against MGM. *Jarkesy*, 803 F.3d at 22. Like plaintiff's claims in *Jarkesy*, MGM's "constitutional claims are the vehicle by which [MGM] seek[s] to reverse" the Commission's decisions to issue and reaffirm the Demand, and to decline to disqualify Chair Khan from the agency's investigation into MGM's data security practices. *Id*. at 23. Indeed, MGM's

13

claims are the mirror image of (and constitute anticipatory defenses to) the Commission's enforcement petition, which is now pending in the District of Nevada. *See* Enf't Pet. at 3-16. MGM's claims certainly cannot be "wholly collateral" to that enforcement petition, which indisputably falls within the Act's judicial review scheme. That MGM framed its potential defenses as constitutional claims is of no discernible import; "Congress did not intend the framing of a constitutional challenge . . . to grant a district court jurisdiction over an otherwise non-collateral claim." *Jarkesy*, 803 F.3d at 24.

*Third*, MGM's claims are quintessentially the types of claims that fall within the agency's expertise because they all concern the construction and application of the Commission's own regulations—i.e. whether the Commission's existing rule for disqualifying a commissioner sufficiently protects MGM from potential bias; whether the Demand issued to MGM conforms to the rules governing the issuance and scope of demands; and whether MGM is subject to the Safeguards and Red Flags Rules. It is hornbook law that an administrative agency is entitled to significant (often decisive) deference in interpreting its own rules. *See, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558 (2019) (affirming the continued validity of the rule of judicial deference in *Auer v. Robbins*, 519 U.S. 452 (1997)). Indeed, "there are precious few cases involving interpretation of [even] statutes authorizing agency action in which [judicial] review is not aided by the agency's statutory construction." *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993).

Because Congress demonstrably created an exclusive judicial review scheme in the Act, and because MGM's claims are of the type Congress intended to be reviewed within that scheme, this Court lacks subject matter jurisdiction to hear MGM's claims.

### C.     The *Axon* Exception for Challenges to an Agency's Constitutional Structure Is Inapplicable.

"*Axon* recognized a narrow exception to Congress's prescribed path for judicial review of agency action for facial challenges to the constitutional structure of administrative agencies' ability

to operate." *Loma Linda-Inland Consortium for Healthcare Educ. v. Nat'l Lab. Rels. Bd.*, No. 23-5096, 2023 WL 7294839, *11 (D.C. Cir. May 25, 2023); *accord Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 758 (10th Cir. 2024) (*Axon* concerned "constitutionality of those agencies' structure"). In *Axon*, the respondent in an administrative proceeding before the Commission brought a freestanding declaratory judgment action against the agency, asserting facial constitutional challenges to the Commission's core administrative process. *Axon*, 598 U.S. at 183. Axon claimed that the Commission's "ALJs could not constitutionally exercise governmental authority because of their dual-layer protection from removal," and that "the combination of prosecutorial and adjudicative functions in the Commission renders all of its enforcement actions unconstitutional." *Id*.

The Supreme Court held that these claims—"fundamental, even existential" challenges to the very structure of administrative agencies—were not precluded by the ordinary review scheme in the Act. *Axon*, 598 U.S. at 180. The Court was careful to note, however, the "extraordinary" nature of Axon's claims, *id*., describing them as "far-reaching constitutional claims," *id*. at 185, challenging a "fundamental aspect of the Commission's structure," *id*. at 182, and going "to the core of the [Commission's] existence," *id*. at 189. The Court emphasized that Axon's challenges "are not to any specific substantive decision—say, to fining a company (*Thunder Basin*) or firing an employee (*Elgin*). Nor are they to the commonplace procedures agencies use to make such a decision." *Id*. Axon's claims went "to the structure or very existence of an agency: They charge that an agency is wielding authority unconstitutionally in all or a broad swath of its work." *Id*. And the Court cautioned: "Nothing we say today portends newfound enthusiasm for interlocutory review." *Id*. at 192.

MGM's claims here are an entirely different animal than Axon's. MGM levels only a routine, as-applied challenge to the Commission's investigation of its data security practices.

MGM's claims challenge only the interpretation and application of Commission rules—in this particular case. Nothing in MGM's complaint attacks the structure of the Commission as an administrative agency or jeopardizes its very existence.

Notwithstanding MGM's framing of its claims as constitutional violations, the claims simply do not fit within *Axon*'s narrow exception. As the D.C. Circuit has observed, "[n]othing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding…, especially fact-bound as-applied claims to a particular exercise of agency jurisdiction, can bypass the congressional scheme established for judicial review." *Loma Linda-Inland Consortium*, 2023 WL 7294839 at *11.

## II.  MGM's Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Even if this Court had subject matter jurisdiction, MGM's complaint should still be dismissed under Rule 12(b)(6) for failure to state a claim. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint in two dimensions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "Whether [MGM's claims] are claims 'upon which relief can be granted' depends in part on whether there is a cause of action that permits [MGM] to invoke the power of the court to redress the violations of law that [MGM] claims the [Commission] has committed." *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006) (citing *Davis v. Passman,* 442 U.S. 228, 239-240 & n.18 (1979)). "It also depends on whether the allegations of [MGM's] complaint are legally sufficient to state the violations [MGM] claims." *Trudeau*, 456 F.3d at 188.

MGM satisfies neither requirement; it does not invoke a cognizable cause of action for its claims, and its allegations fall far short of stating a plausible claim for relief.

### A.  MGM's Complaint Fails to Identify a Cognizable Cause of Action

An alleged violation of law, standing alone, is not enough for judicial review. MGM can secure relief in federal court only if a source of law grants it a cognizable "cause of action."

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "Courts often use the terms 'cause of action' and 'claim' interchangeably." *Trudeau*, 456 F.3d at 188 n.15. We use "cause of action," as the D.C. Circuit has used the term, to refer to "the legal authority (e.g., the APA) that permits the court to provide redress for a particular kind of 'claim.'" *Id.*

Here, MGM's complaint invokes as a basis for "immediate judicial review in this Court" the Declaratory Judgment Act, 28 U.S.C. § 2201; the APA, 5 U.S.C. §§ 702, 704; and the Fifth Amendment of the U.S. Constitution. Compl. ¶ 25; *see id.* ¶¶ 104-129. Although MGM's complaint contains multiple citations to the Act, *see. e.g.*, *id.* at ¶¶6, 49, 72, 78, 102, 127, MGM rightly has not invoked that statute as a source for a cause of action. "No district court action for a declaratory judgment is authorized by the Federal Trade Commission Act." *Floersheim v. Engman*, 494 F.2d 949, 954 (D.C. Cir. 1973). None of these sources of law provides MGM with a viable cause of action in this case.

1.    <u>MGM Has No Statutory Cause of Action.</u>

Neither the Declaratory Judgment Act nor the APA supplies the requisite cause of action in this case. The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations of" the parties only "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The statute does not *itself* "provide a cause of action," because the "availability of declaratory relief presupposes the existence of a judicially remediable right." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *accord Flete-Garcia v. United States*, Civ. A. No. 19-2547 (KBJ), 2019 WL 13522503, at *1 (D.D.C. Oct. 8, 2019). MGM must allege an independent, "cognizable cause of action," over which this Court has jurisdiction. *Ali*, 649 F.3d at 778.

Generally, the APA provides "a generic cause of action in favor of persons aggrieved by agency action." *Trudeau*, 456 F.3d at 188 (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985)); *accord Galvin*, 586 F. Supp. 3d at 6. When

the United States or one of its agencies is the subject of a lawsuit concerning an allegedly adverse

administrative action (or inaction), "[t]he jurisdiction of the federal courts to review administrative

action is codified in the Administrative Procedure Act." *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 372

(7th Cir. 1983). Indeed, the APA provides the "exclusive" method for review of agency conduct;

plaintiffs "may not bypass the specific method that Congress has provided for reviewing adverse

agency action simply by suing the agency in federal district court under [28 U.S.C. §] 1331." *Id.*

at 368 (citing 5 U.S.C. §§ 703, 704).

The APA's judicial-review provisions, 5 U.S.C. §§ 701-706, "create a right of review,"

*Schieber v. United States*, 77 F.4th 806, 813 (D.C. Cir. 2023), but the review is limited to either

(1) "[a]gency action made reviewable by statute," or (2) "final agency action for which there is no

other adequate remedy in a court." 5 U.S.C. § 704; *see Bellion Spirits, LLC v. United States*, 7

F.4th 1201, 1208 (D.C. Cir. 2021); *accord EB5 Holdings, Inc. v. Jaddou*, No. 23-1180, 2024 WL

687945, at *7 (D.D.C. Feb. 20, 2024). Here, MGM does not challenge an action "made reviewable

by statute." 5 U.S.C. § 704. The only statute that substantively pertains to MGM's claims is the

Act, which, as noted above, *supra* n.8, does not authorize declaratory relief. *Floersheim*, 494 F.2d

at 954.

MGM's claims would be reviewable under the APA, therefore, only if MGM (a) challenged

a "final" Commission action; and (b) had "no other adequate remedy in a court." 5 U.S.C. § 704.

MGM satisfies neither requisite. To begin, "two conditions must be satisfied" for an agency action

to be "final" for APA purposes: "First, the action must mark the consummation of the agency's

decisionmaking process," in the sense that "it must not be of a merely tentative or interlocutory

nature. And second, the action must be one by which rights or obligations have been determined,

or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)

(internal quotation marks and citations omitted); *accord Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018); *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 41 (D.D.C. 2018) (Bates, J.).

The only Commission action that MGM challenges is the agency's investigation into MGM's data security practices, including the Demand issued in aid of that investigation and Chair Khan's participation in it. This action does not satisfy *Bennett*'s finality conditions. An ongoing investigation is not "the consummation of the agency's decisionmaking process," *Bennett*, 520 U.S. at 177; it is scarcely the beginning of that process. The Commission has not yet decided whether to proceed against MGM for any law violation, and many Commission investigations do not result in an enforcement proceeding. *See* 16 C.F.R. § 4.14 (initiating an enforcement proceeding requires a Commission vote).

Further, as the Supreme Court has long held, even if the Commission initiates an enforcement proceeding—whether in court under section 13(b) of the Act, 15 U.S.C. § 53(b), or administratively under section 5 of the Act, *id*. § 45—the filing or issuance of a complaint is not a "final" decision for purposes of APA review. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980). Indeed, the Court has cautioned that judicial review "before adjudication concludes" is likely to interfere with "the proper functioning of the agency," and thus "should not be a means of turning prosecutor into defendant." *Id.* at 242-43. A complaint merely initiates the process of fixing the rights and obligations of the parties, and only the final judgment of that adjudicatory process would mark the point when plaintiffs' rights or obligations can be said to "have been determined." *Bennett*, 520 U.S. at 178. Until then, no "legal consequences will flow." *Id.*

If the agency's issuance of a formal complaint is not a final, reviewable action, then a fortiori the mere investigation to determine whether to issue a complaint cannot possibly be final. *See, e.g.*, *Gen. Fin.*, 700 F.2d at 368 (Commission's issuance of investigatory subpoenas deemed

not final agency action notwithstanding agency's denial of petitions to quash the subpoenas); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 875 (8th Cir. 1977) (same).

Absent final agency action, "there is no doubt that [plaintiff] would lack a cause of action under the APA." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003); *accord Trudeau*, 456 F.3d at 188 (Section 704 of the APA "'limits causes of action under the APA' to 'final agency action'") (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 799 (D.C. Cir. 2006)).

Moreover, MGM cannot show that it has "no other adequate remedy in a court." 5 U.S.C. § 704. The existence of an adequate remedy is "an element of the cause of action created by the APA." *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017). MGM plainly has an adequate remedy elsewhere—in the enforcement petition proceeding pending in the District of Nevada. There, MGM will be able to defend its non-compliance and to press all the claims and arguments it advances here. Likewise, the remedies MGM seeks in this action, Compl. at 19-20, will all be available to it in that proceeding. MGM's ready opportunity for a court hearing in the enforcement petition fully "satisfies the requirements of due process." *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 598 (1950).

Because MGM fails to meet the APA requirements for judicial review, it has no cause of action under that statute.

### 2.   MGM Has No Cause of Action Under the Fifth Amendment.

MGM also cannot rely on the Fifth Amendment itself as the source of a viable cause of action in this case. "When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis." *Zigler v. Abbasi*, 582 U.S. 120, 135 (2017); *accord Comm. on Judiciary of U.S. House of Representatives v. McGahn*,

973 F.3d 121, 123 (D.C. Cir. 2020). The key question regarding whether to infer such a cause of action is, as the Supreme Court put it, "'who should decide,' . . . Congress or the courts?" *Zigler*, 582 U.S. at 135 (quoting *Bush v. Lucas*, 462 U.S. 367, 380 (1983)).

"The answer most often will be Congress." *Zigler*, 582 U.S. at 135. "Private rights of action to enforce federal law must be created by Congress." *Sledge v. District of Columbia*, 869 F. Supp. 2d 140, 143 (D.D.C. 2012) (Bates, J.) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). Where Congress has supplied a specific, adequate means for challenging and remedying agency action, no other cause of action (including a constitutional one) should be judicially implied. In *FTC v. Claire Furnace Co.*, 274 U.S. 160, 174 (1927), for instance, the Supreme Court dismissed plaintiffs' challenge to Commission subpoenas for lack of jurisdiction. The Court held that Congress, in providing the Act's "method of enforcing" those subpoenas, intended to impose prerequisites to judicial review of Commission subpoenas, which the district court effectively "dispensed with" by entertaining plaintiffs' suit. *Id.*; *see also Reisman v. Caplin*, 375 U.S. 440, 446 (1964) (no cause of action to challenge IRS administrative summons where IRS statute provided for enforcement solely through court action that would "afford[] a judicial determination of the challenges to the summons").

The D.C. Circuit has rejected an implied cause of action in other contexts where such judicial implication "would conflict with" "Congress's carefully drafted" "statutory limitations on civil suits." *McGahn*, 973 F.3d at 123. Other courts of appeals passing on the question agree. *See Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334-35 (10th Cir. 1984); *Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980); *Am. Motors Corp. v. FTC*, 601 F.2d 1329, 1332, 1335-37 (6th Cir. 1979); *Blue Ribbon Quality Meats*, 560 F.2d at 876; *Howfield, Inc. v. United States*, 409 F.2d 694, 697 (9th Cir. 1969).

As discussed above, Congress, by enacting the APA, provided for a cause of action to challenge the conduct of administrative agencies. But Congress also intended the APA to be the "exclusive" means of reviewing such challenges. *Gen. Fin.*, 700 F.2d at 368. The reasons for this "exclusivity" are obvious. If invoking the Constitution as the source of their cause of action were enough for plaintiffs to circumvent APA requirements like the finality of agency action and absence of adequate remedy elsewhere, those congressionally mandated limits would be a dead letter. And the decision to provide for such an *unlimited* cause of action would have been the courts' own— and *contrary* to Congress's expressed intent. *See McGahn*, 973 F.3d at 123.

Here, MGM brought the exact claims, and is seeking the same remedies, under both the APA and the Fifth Amendment. *See* Compl. ¶ 25. MGM's complaint fails to satisfy the APA's review conditions, so Congress's evident intent is to not provide a cause of action for MGM's claims. Because Congress has supplied "[t]he answer," *Zigler*, 582 U.S. at 135, MGM's Fifth Amendment cause of action also fails.

### B.      MGM's Complaint Allegations Fail to State a Plausible Claim for Relief

Even were MGM to have a cognizable cause of action, its complaint still fails to allege a plausible claim for relief.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if the plaintiff's relevant allegations are sufficient to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Claims that do not meet the plausibility standard must be dismissed on a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 570.

1.      MGM's Allegations Concerning the Commission Chair are Insufficient for a Claim of Potential Bias.

MGM's allegations do not state a plausible claim of bias by Commission Chair Lina Khan. Counts I and II of the Complaint challenge, respectively, the scope and application of Rule 4.17 of the Commission's Rules of Practice, 16 C.F.R. § 4.17, concerning the disqualification of commissioners. Count I alleges that Rule 4.17 is impermissibly limited to Commission adjudicatory and rulemaking proceedings, and thus does not apply to potential bias in the conduct of investigations like that of MGM's data security practices. *See* Compl. ¶¶ 104-111. Count II alleges that Chair Khan should have been disqualified from participating in that MGM investigation. *Id*. ¶¶ 112-118.

Both counts rest on a single factual allegation: that "Chair Khan and an unnamed senior aide were guests at one of MGM's Las Vegas properties during the [MGM September 2023 cyber security] attack and were inconvenienced by MGM's incapacitated IT systems." Compl. ¶ 4. Specifically, the Complaint quotes a news report that Chair Khan and her aide had "to write down their credit card information on a piece of paper," and that Chair Khan asked the staff at the MGM hotel's front desk, "How exactly was MGM managing the data security around this situation," to which, in response, the desk agent "shrugged and said he didn't know." *Id*. (citation omitted). MGM claims that Chair Khan's "personal involvement creates an appearance of a conflict, and on information and belief, an actual conflict," because "Chair Khan is both a potential civil plaintiff and a potential witness." *Id*. ¶¶115, 9.

MGM's allegations, taken as true, cannot plausibly support a claim of bias on the part of Chair Khan in the conduct of the MGM investigation. MGM's claim that Chair Khan's writing her credit card information on paper makes her a potential witness fails the *Iqbal* plausibility test. As the Commission noted in declining MGM's request to disqualify Chair Khan, "this so-called pre-existing knowledge consists simply of knowing that a breach occurred and that MGM's operations

were disrupted, facts that have been widely reported in the news." Compl. Ex. 4, at 16 n.18. Indeed, MGM itself relies on news reports for its allegation of Chair Khan's purported "pre-existing knowledge." *See id*. ¶ 4. Such public information hardly renders potential testimony by Chair Khan of any legal significance. *See id*. Ex. 4, at 16 n.18 ("That Chair Khan learned of the breach while an MGM hotel guest is not legally significant.").

MGM's claim that Chair Khan could become a plaintiff in a private suit against MGM is even less plausible. From MGM's own description of the incident, *see* Compl. ¶ 4, Chair Khan apparently arrived at the MGM Las Vegas hotel after the data breach had occurred—hence her having to provide her credit card information on paper. Therefore, her own personal information would not have been exposed when the breach took place. MGM does not allege otherwise. Chair Khan is thus not one of the consumer victims of the MGM data breach and cannot be part of any plaintiff class claiming such injury.

To the extent Chair Khan could have a claim against MGM, it would have to be solely for being "inconvenienced," Compl. ¶ 4, by having to provide her credit card information on paper rather than, for example, through an electronic card reader. That claim too does not survive the plausibility test because no consumer—including Chair Khan—is entitled to provide credit card information in one particular form or the other. At any rate, Chair Khan "voluntarily elect[ed] to waive any interest that she may have in any relief resulting from the filed class actions or any substantially related matter—thus extinguishing any potential financial conflict arising from these actions." Compl Ex. 4 at 16 n.18.

Lastly, that the Commission in fact decided MGM's petition for recusal or disqualification, *see* Compl Ex. 4 at 16 n.18, renders moot MGM's claim that the absence of a Commission-regulated disqualification mechanism during the investigation is a violation of MGM's due process rights. The Commission—notwithstanding the Commission Secretary's rejection of MGM's

petition on procedural grounds—considered MGM's claims and arguments regarding disqualification and rejected them on the merits. *Id*. MGM has suffered no injury from the due process violation it alleges.

MGM's arguments regarding the Commission's disqualification procedures are meritless anyway. During the Commission investigation phase—when no adjudicatory proceedings exist to trigger the operation of Commission Rule 4.17—the Commissioners' role is that of prosecutors or plaintiffs, not judges. The Supreme Court long has held that having agency officials serving in such a role does not threaten the basic due process right to a "fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955). "The rigid requirements . . . designed for officials performing judicial or quasi-judicial functions [] are not applicable to those acting in a prosecutorial or plaintiff-like capacity." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980). This is so because prosecutors "need not be entirely neutral and detached," and "are necessarily permitted to be zealous in their enforcement of the law." *Id*. (internal quotation marks and citation omitted); *see Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1168 (D.C. Cir. 1979) ("We must not impose judicial roles upon administrators when they perform functions very different from those of judges.").

Moreover, Commissioners are still bound by federal laws and ethics regulations governing officials and employees of the Government, *see, e.g.*, 18 U.S.C. § 208; 5 C.F.R. § 2635.402 (governing the participation in matters posing financial conflicts of interest), as well as by state ethics regulations governing the conduct of members of the bar. *See* Compl. Ex. 3 at 12-13 (MGM citing sources of ethical safeguards for government employees). Given these due process safeguards and the reduced risk of bias outside the context of adjudication, the absence of Commission-specific regulations for the disqualification of commissioners during investigations does not violate MGM's due process rights.

2.      The Compliance Deadline Is Not Unconstitutionally Arbitrary.

Count III of MGM's Complaint asserts that the Commission "gave MGM just 11 days to comply with the [Demand]," and that such "11-day deadline is arbitrary, and wholly impracticable considering the immense scope of the [Demand]," and "deprives MGM of due process and equal protection." Compl. ¶¶ 120-121.

MGM's allegation of an 11-day deadline does not withstand scrutiny. The Commission's Demand was issued on January 25, 2024 (and served on MGM's registered agent on January 29, 2024) with a return date of February 26, 2024. This is supported by MGM's own pleadings. *See* Compl. Ex. 1, at 4; *id*. Ex. 4, at 2. Because of MGM's filing of its petition to quash or limit the Demand, MGM's deadline for compliance effectively was extended to April 15, 2024, Compl. Ex. 4 at 16—a full 77 days after the service of the Demand.

Moreover, the new compliance deadline of April 15 was further qualified by the proviso "or at such other date, time, and location as the Commission staff may determine." *id.* at 16. This is the standard language the Commission employs to allow demand recipients to work out with the Commission staff the timing and manner of a reasonable compliance plan. Significantly, MGM does not allege that it ever sought and was denied a reasonable extension of the April 15 deadline. To the contrary, when Commission staff contacted MGM's counsel to work out a compliance plan following the Commission's denial of MGM's petition to quash, MGM's counsel made it clear that MGM had no intention of complying with the Demand at all—no matter the deadline. *See* Enf't Pet. ¶¶ 14-16, Ex. 12.[4] Under these circumstances, MGM's allegations do not state a plausible claim for relief.

---

[4]      The Court may rely on judicially noticed matters, such as publicly filed pleadings, in its consideration of 12(b)(6) motions to dismiss. *Galvin*, 586 F. Supp. 3d at 9 (citing *St. Francis Xavier Parochial Sch.*, 7 F.3d at 624).

3.   **The Commission is entitled to investigate whether any of its regulations apply to MGM.**

Count IV of MGM's Complaint alleges that MGM is not subject to the Commission's Safeguards Rule or Red Flags Rule, and that the Commission's reliance on those Rules in issuing the Demand violated MGM's Fifth Amendment rights. Compl. ¶¶ 125-29. These allegations too fail to state a plausible claim for relief.

As the Commission explained in denying MGM's petition to quash the Demand, *see* Compl. Ex. 4, at 4-5, MGM's claim that those Rules are inapplicable does not relieve it of its duties to comply with the Demand—and thus cannot infringe its due process rights—because the Commission has the authority to investigate whether the agency's jurisdiction extends to particular entities or practices.[5] The D.C. Circuit has consistently held that administrative agencies are accorded "wide latitude in asserting their power to investigate by subpoena," and that "an individual may not normally resist an administrative subpoena on the ground that an agency lacks regulatory jurisdiction if the subpoena is issued at the investigative stage." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001) (internal quotation marks and citations omitted). Indeed, an agency's "jurisdiction to determine whether it has jurisdiction is as essential to its effective operation as is a court's like power." *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 627 (1973).

In that sense, the Commission's investigative authority under Section 20 of the Act, 15 U.S.C. § 57b-1—under which the Demand was issued—is broader than its enforcement authority under Section 5 of the Act, *id.* § 45. This is so because "each independent regulatory administrative agency has the power to obtain the facts requisite to determining whether it has

---

[5]   The Commission also noted that, at any rate, a preliminary review of MGM's business operations shows that those Rules are in fact applicable to MGM's practice of extending credit to its customers in the form of financial instruments known as "markers." *See* Compl. Ex. 4 at 5-9.

jurisdiction over the matter sought to be investigated." *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 434 (9th Cir. 1975); *see, e.g.*, *XYZ Law Firm v. FTC*, 525 F.Supp.1235, 1237-38 (N.D. Ga. 1981) (rejecting argument that FTC could not investigate a target for potential violations of the Fair Debt Collection Practices Act because the target contended it fell under that statute's exemption for attorneys).

The Demand seeks just such information. For instance, MGM asserts that it is not subject to the Commission's Safeguards and Red Flags Rules "because MGM is not a financial institution, nor does it extend credit to its customers." Compl. ¶ 125. To determine whether MGM meets the regulatory definitions of "financial institution" and "creditor" under those Rules, Demand specification 30 demands that MGM "[s]tate whether [MGM] regularly and in the ordinary course of business . . . [a]dvances funds," *id*. Ex. 1 at 13—the regular advancing of funds to consumers being a jurisdictional indicia under those Rules, *see* 16 C.F.R. §§ 314.2(h)(1), 681.1(b)(5). Because the Commission is fully entitled to investigate whether MGM is subject to the two challenged rules, the issuance of the Demand to aid in that determination cannot violate MGM's due process rights.

## III.   Declaratory Relief Is Inappropriate

Finally, even if MGM's claims were well-pleaded, the case still should be dismissed because declaratory relief is inappropriate.

The Declaratory Judgment Act provides "a remedial arrow in the district courts' quiver," but does not impose a "duty" to grant relief to litigants. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). Thus, the Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton*, 515 U.S. at 286). "Consistent with the nonobligatory nature of the remedy," this Court "is authorized, in the sound exercise of its

discretion, . . . to dismiss an action seeking a declaratory judgment" at any time. *Wilton*, 515 U.S. at 288. *See, e.g.*, *Gibson v. Liberty Mut. Grp.*, 778 F. Supp. 2d 75, 79-80 (D.D.C. 2011) ("this case is not appropriate for declaratory relief."). And "a court may dismiss a declaratory action for equitable, prudential, or policy arguments." *Glenn v. Fay*, 222 F. Supp. 3d 31, 35-36 (D.D.C. 2016).

Generally, courts dismiss declaratory-judgment suits when (1) "the same issue is pending in litigation elsewhere," or (2) the declaratory suit was used to attack a later-filed enforcement action. *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015). *See, e.g.*, *id.* at 697-98; *POM Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 77-80 (D.D.C. 2009). This case fits both scenarios: MGM's claims and arguments can all be raised in the Commission's enforcement petition pending in the District of Nevada. And MGM seeks to forestall that enforcement proceeding. Compl. at 19-20.

"[C]onsiderations of practicality and wise judicial administration" should guide the dismissal of declaratory actions. *Wilton*, 515 U.S. at 288. The D.C. Circuit has enumerated these considerations as "a non-exclusive list of 'factors'"—known as the *Hanes* factors. *Morgan Drexen*, 785 F.3d at 696; *see Hanes Corp. v. Millard*, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976).

The *Hanes* factors decidedly favor dismissal of MGM's declaratory action. The *Hanes* factors include, among others, whether the declaratory action would settle the entire controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; and the prevention of procedural fencing. 531 F.2d at 592 n.4. The threshold *Hanes* factor is the "prevention of 'procedural fencing.'" *Id*. Courts "take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff.'" *POM Wonderful*, 894 F. Supp. 2d at 45 (quoting *Swish Mktg.*, 669 F. Supp. 2d at 78); *accord Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 118

(D.D.C. 2013). "[W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment." *Gov't Emps. Ins. Co. v. Rivas*, 573 F. Supp. 2d 12, 15 (D.D.C. 2008).

MGM has employed the Declaratory Judgment Act here merely as "a tactical device." *Rivas*, 573 F. Supp. 2d at 15. MGM raced to the Court two weeks after the Commission denied its petition to quash the Demand and to disqualify Chair Khan, expressly seeking to preclude the Commission from "enforcing the" Demand. Compl. at 19. An enforcement petition followed shortly thereafter. *See* Enf't Pet.. Courts have consistently rejected attempts "to secure tactical leverage" through the filing of a declaratory judgment action. *POM Wonderful*, 894 F. Supp. 2d at 45; *see, e.g.*, *Swish Mktg.*, 669 F. Supp. 2d at 78-79; *see also Morgan Drexen*, 785 F.3d at 698 (affirming dismissal of declaratory suit on finding that plaintiff "engaged in procedural fencing").

"The anticipation of defenses is," likewise, "not ordinarily a proper use of the declaratory judgment procedure." *Hanes*, 531 F.2d at 592-93. Otherwise, a potential defendant in an enforcement action could easily "turn every case in which there is a defense into two cases." *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003). MGM is doing exactly that. In this action, it seeks a declaration that the Fifth Amendment precludes the Commission's investigation into its data security practices. *See* Compl. at 19-20. But in the pending enforcement petition, MGM can raise the same constitutional argument as an affirmative defense to complying with the Demand. *See, e.g.*, *POM Wonderful*, 894 F. Supp. 2d at 44 (noting that firm can raise First Amendment argument in "FTC's parallel enforcement action."). Because the core issue in this case is "properly considered an anticipatory defense," "this factor further counsels against the exercise of the Court's jurisdiction." *Swish Mktg.*, 669 F. Supp. 2d at 80.

Given the pendency of the enforcement petition, the Court should also "give[] strong weight to the fact that 'other remedies are available' and that there are 'other proceedings pending'

in which [MGM's] claims may be resolved." *Morgan Drexen*, 979 F. Supp. 2d at 117 (quoting *Hanes*, 531 F.2d at 591 n.4). The Demand action affords MGM a full opportunity to air its views because MGM "will be able to raise" in that action "the same argument it has pursued in this action." *Swish Mktg.*, 669 F. Supp. 2d at 80.

MGM "does not currently act at its peril" because it can suffer no injury unless and until the court in the enforcement petition rules against it. *Morgan Drexen*, 785 F.3d at 698 (cleaned up). The Supreme Court has upheld this principle for nearly a century. *See Claire Furnace*, 274 U.S. at 174 (preemptive challenge to Commission subpoenas "should have been dismissed" because "defendants cannot suffer" unless the challenged subpoenas are enforced in court).

Lastly, adjudication of MGM's claims in the enforcement petition will not cause MGM delay or inconvenience. The enforcement action will not be slower to reach the merits than this action. And the enforcement action is in MGM's home district. *See, e.g.*, *Swish Mktg.*, 669 F. Supp. 2d at 80.

The *Hanes* factors thus overwhelmingly counsel in favor of dismissing MGM's declaratory action.

\*   \*   \*

**CONCLUSION**

For the reasons set forth above, this action should be dismissed with prejudice.

Dated: June 24, 2024
       Washington, DC

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES, D.C. Bar #481052
                                        United States Attorney

                                        BRIAN P. HUDAK
                                        Chief, Civil Division

By: _____ /s/ *Brenda González Horowitz*
                                        BRENDA GONZÁLEZ HOROWITZ
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-2512

                                        *Attorneys for the United States of America*

OF COUNSEL:

Anisha Dasgupta
General Counsel

Michele Arington
Assistant General Counsel

Imad D. Abyad
Attorney

*Federal Trade Commission*