UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MGM RESORTS INTERNATIONAL,

           Plaintiff,

      v.

FEDERAL TRADE COMMISSION, et al.,

          Defendants.

Civil Action No. 24-1066 (JDB)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The Federal Trade Commission ("Commission") has demonstrated in its motion to dismiss ("Def.'s Mot.," ECF No. 15) that Complaint filed by Plaintiff MGM Resorts International ("MGM") should be dismissed under both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), and that declaratory relief is inappropriate. Def.'s Mot. at 9-32. MGM's opposition ("Pl.'s Opp.," ECF No. 17) fails to show otherwise.

Regarding this Court's subject matter jurisdiction, MGM's opposition fails to show that MGM's claims fall outside the review scheme of the Federal Trade Commission Act (the "Act"), which would channel those claims to a federal court of appeals following a Commission cease and desist order. MGM also does not explain why its claims cannot be raised in the Commission's enforcement proceedings pending against MGM in the U.S. District Court for the District of Nevada. *See FTC v. MGM Resorts Int'l*, Civ. A. No. 24-1112 (D. Nev. June 17, 2024) ("Enforcement Pet."). The only explanation MGM offers is that the Nevada action was not pending when MGM filed this case. But before the enforcement action was filed, MGM was not legally required to do anything—and thus did not suffer any injury.

MGM did not—indeed, could not—suffer any due process harm from either the Commission's issuance of the Civil Investigative Demand (the "Demand") or the Commission's denial of MGM's petitions to quash the Demand and to disqualify Chair Khan. Contrary to MGM's assertion, MGM is not "made to participate in the Commission's internal processes." Pl.'s Opp. at 2. The Demand is not self-executing; only a court's order can require MGM's compliance. Thus, unless and until a judicial enforcement order is issued, MGM does not risk any harm from noncompliance. And, of course, because a judicial enforcement order is required, MGM has a full opportunity to contest the enforcement of the Demand in federal court, plainly providing any process that MGM is due under the Constitution.

*Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), on which MGM relies, does not aid its jurisdictional arguments. *Axon* concerned the Commission's own adjudicatory proceedings, initiated with an administrative complaint against Axon, which required Axon to answer and defend the antitrust charges against it. Axon challenged the Commission proceedings as unconstitutional, and the Supreme Court held that the challenge could be heard in federal district court. No such proceedings exist here. The Commission did not initiate any proceedings that would require MGM to do anything. The only proceedings the Commission initiated are for enforcement of the Demand before an Article III court in Nevada—where MGM has a meaningful avenue of relief and will be afforded all process due to it.

MGM's opposition also fails to identify a cognizable cause of action, under either the Administrative Procedure Act ("APA") or the Fifth Amendment—which renders the Complaint fatally deficient under Rule 12(b)(6). That the Commission denied MGM's petitions to quash the Demand and to disqualify Chair Khan does not render either of these actions "final" for APA review. MGM was not required to do anything in response to these actions, so it suffered no injury or violation of a legal right. In addition, MGM can pursue relief in the Nevada enforcement proceedings. MGM, therefore, has not established the requisite statutory conditions for judicial review under the APA.

Moreover, because the APA provides the exclusive means for review of MGM's claims of allegedly unlawful Commission actions (or inactions), MGM also lacks a viable cause of action directly under the Fifth Amendment. That is, while MGM may present an APA claim premised on the Commission's actions being inconsistent with the Fifth Amendment, its claim must still satisfy the APA's threshold requirements for suit. *See* 5 U.S.C. § 706(2)(A), (B) (providing a cause of action to "hold unlawful and set aside agency action" that is "not in accordance with law" or

"contrary to constitutional right"). To conclude otherwise would render the APA's review conditions a dead letter.

Nor does MGM's opposition show that its allegations state a plausible claim for relief, which provides an independent basis for dismissal under Rule 12(b)(6). The allegations of bias at the heart of MGM's claims are purportedly because Chair Khan stayed at one of MGM's hotels after MGM's most recent data breach and had to provide her credit card information on paper. MGM's claim that this experience caused Chair Khan to be biased in the conduct of the Commission's investigation of MGM's data security practices is implausible on its face. Chair Khan has suffered no cognizable injury and, at any rate, has disclaimed any interest that could possibly arise from that experience. Contrary to MGM's claim, Chair Khan also was not privy to any non-public information that could render her a potential witness.

Given the implausibility of MGM's bias claim, Chair Khan's participation in denying MGM's petitions to quash the Demand and to disqualify her does not give rise to a plausible due process claim. Contrary to MGM's assertions, the Commission's petition-to-quash process is non-adjudicatory; it is akin to asking a litigant to withdraw a discovery request. Likewise, seeking the Chair's disqualification is akin to seeking a prosecutor's disqualification, with the ultimate decision subject to judicial review. That Commission Rule 4.17 requires the non-participation of the Commissioner sought to be disqualified is irrelevant here because that Rule applies only to adjudicatory and rulemaking proceedings, neither of which is at issue in this case.

Equally implausible are MGM's claims based on the Demand's response deadline and reliance on the Commission's Safeguards and Red Flags Rules. MGM does not deny that the actual response period (of no fewer than seventy-seven days) far exceeded MGM's alleged eleven-day deadline, or that MGM never sought an extension because it had already decided against

compliance anyway. Likewise, MGM's opposition offers nothing to rebut the well-established principle that the Commission has the authority to investigate—and thus the authority to issue a demand in connection with—whether its rules apply to MGM's business operations.

In the end, the Court's declaratory jurisdiction is discretionary, and relief is inappropriate in this case because the same issues are pending elsewhere, and MGM's claims can be raised there. MGM contends that it only seeks "a fair hearing before an impartial tribunal that provides equal treatment under the law." Pl.'s Opp. at 3. That is exactly what MGM has in the District Court in Nevada, where the enforcement case is pending and where MGM can air all its grievances here. This action should be, therefore, dismissed with prejudice.

## ARGUMENT

### I.     This Court Lacks Subject Matter Jurisdiction.

This Court lacks jurisdiction to hear MGM's claims. MGM's opposition does not challenge the fact that Congress has set up in the Act a comprehensive judicial review scheme to channel challenges to Commission actions through "review in a court of appeals following the agency's own review process." *Axon*, 598 U.S. at 185; *accord Fed. Law Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 558 (D.C. Cir. 2023). Congress's "creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases." *Axon*, 598 U.S. at 185. This applies to statutory as well as constitutional challenges to agency action. *Id*.; *accord Elgin v. Dep't of Treasury*, 567 U.S. 1, 10 (2012); *Jarkesy v. SEC*, 803 F.3d 9, 19 (D.C. Cir. 2015). MGM's arguments that its claims fall outside this statutory scheme are without merit.

### A.     The Supreme Court's *Axon* Decision Is Inapplicable.

MGM incorrectly invokes *Axon* in arguing that its claims fall outside the Act's review scheme. Pl.'s Opp. at 8-15. *Axon*'s "narrow exception to Congress's prescribed path for judicial review," *Loma Linda-Inland Consortium for Healthcare Educ. v. Nat'l Lab. Rels. Bd.*,

No. 23-5096, 2023 WL 7294839, *11 (D.C. Cir. May 25, 2023), is inapplicable here. First, the claims at issue in *Axon* are different in kind than MGM's. *Axon* concerned "facial challenges to the constitutional structure of administrative agencies' ability to operate." *Id*.; *accord Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 758 (10th Cir. 2024) (*Axon* concerned "constitutionality of those agencies' structure."). The Supreme Court itself characterized *Axon*'s claims as "existential" challenges to a "fundamental aspect of the Commission's structure." *Axon*, 598 U.S. at 180, 182. The Court emphasized the "extraordinary" and "far-reaching" nature of the claims, *id*. at 180, 185, because they challenged "the core of the [Commission's] existence," *id*. at 189.

MGM's claims, by contrast, are "fact-bound as-applied claims to a particular exercise of agency jurisdiction." *Loma Linda-Inland Consortium*, 2023 WL 7294839 at *11. MGM challenges the application of Commission rules to a particular set of facts: the investigation of MGM's data security practices. "Nothing in *Axon* holds that every 'nonfrivolous' constitutional objection to every agency proceeding . . . can bypass the congressional scheme established for judicial review." *Id*.

*Axon* is also distinguishable because, unlike here, Axon challenged the Commission's own proceedings following the issuance of an administrative complaint "alleg[ing] that Axon's purchase of its closest competitor violated the FTC Act's ban on unfair methods of competition." *Axon*, 598 U.S. at 183. The Commission's complaint required Axon to stand trial and defend the charges against it in an administrative hearing before an Administrative Law Judge. *Id*.; *see generally* 16 C.F.R. pt. 3 (Commission Rules of Practice for Adjudicative Proceedings). Axon's challenge went to the validity of those proceedings, seeking "to enjoin the FTC 'from subjecting' it to the Commission's 'unfair and unconstitutional internal forum.'" *Axon*, 598 U.S. at 183. That

is why the Supreme Court analogized Axon's claims to immunity cases, ruling that absent immediate judicial review, Axon would lose the right "not to undergo the complained-of agency proceedings." *Id*. at 192.

MGM is not subject to any administrative proceedings that require it to do anything. The only administrative action the Commission took is to issue the Demand for documents and information. But the Demand is not self-executing; only a court enforcement order can force MGM's compliance. 15 U.S.C. § 57b-1(e) (specifying enforcement of civil investigative demands in federal district court); *see also Wearly v. FTC*, 616 F.2d 662, 665 (3d Cir. 1980) ("a subpoena from the FTC is not self-enforcing."). Thus, contrary to MGM's assertion (Pl.'s Opp. at 10), MGM is not obliged to wait for the conclusion of Commission proceedings and review in a circuit court of appeals to air its grievances. Prior to the Commission's enforcement action in Nevada, MGM had no cognizable grievances because it did not suffer (or risk) any harm. Following the filing of that enforcement action, MGM can press all its claims in that federal district court. Unlike the plaintiff in *Axon*, MGM will not lose any rights from having to abide by the Act's judicial scheme.

**B.    MGM's Claims Fall Within the Act's Judicial Review Scheme.**

MGM erroneously argues that, under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and its progeny, the claims here fall outside the judicial review scheme that Congress set forth in the Act. Pl.'s Opp. at 10-15. To aid in that analysis, courts consider "the *Thunder Basin* factors": (1) whether precluding jurisdiction would "foreclose all meaningful judicial review"; (2) whether the claim at issue is "wholly collateral" to the statutory review provisions; and (3) whether the claim is "outside the agency's expertise." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212-213). MGM is wrong.

*First*, contrary to MGM's assertion, this Court is demonstrably not "MGM's only avenue to meaningful review." Pl.'s Opp. at 11. MGM is also wrong to contend that absent review in this Court, MGM would be forced to "acquiesce to 'an illegitimate proceeding, led by an illegitimate decisionmaker.'" *Id.* (quoting *Axon*, 598 U.S. at 191). As discussed above, MGM is not presently subject to any Commission proceedings that require it to do anything. Moreover, absent any administrative proceedings—which could be reviewed by a federal court of appeals in any event, *see* 15 U.S.C. § 45(c)—all of MGM's claims readily can be raised and adjudicated in the enforcement proceedings pending in the District of Nevada. As part of defending that action, MGM can seek court rulings on the constitutional adequacy of Commission Rule 4.17, any potential bias by Chair Khan, the reasonableness of the Demand's response deadline, and the application of the Commission's Safeguards and Red Flags Rules to MGM's business operations. There are no claims here that cannot be adjudicated in the Nevada enforcement action. The availability of meaningful judicial review for MGM's claims— "the most important factor in the *Thunder Basin* analysis," *Bennett v. SEC*, 844 F.3d 174, 183 n.7 (4th Cir. 2016)—alone suffices to dismiss this action.

MGM inaptly claims that "the Commission refused to even consider MGM's Petition to Recuse or Disqualify because its Rules of Practice preclude any such petitions outside the context of an administrative trial or rulemaking." Pl.'s Opp. at 12. As explained, *see* Def.'s Mot. at 7, the Commission noted MGM's procedural failure to comply with Rule 4.17 but nonetheless ruled on the merits of MGM's petition to disqualify Chair Khan. *See* Compl. Ex. 4 (ECF No.1-5) at 16 n.18.

*Second*, MGM is wrong that its claims are "'wholly collateral' to the FTC Act." Pl.'s Opp. at 12. MGM's complaint challenges the scope and application of Commission Rule 4.17, 16 C.F.R. § 4.17, governing disqualification of commissioners, *see* Compl. ¶¶ 66-86, 104-118; application

of Rules 2.7(b) and 2.10, 16 C.F.R. §§ 2.7, 2.10, governing civil investigative demands, *see* Compl. ¶¶ 87-89, 119-123; and application of the Safeguards and Red Flags Rules, 16 C.F.R. pt. 314, § 681.1, *see* Compl. ¶¶ 90-103, 124-129. That MGM's challenges are framed as alleged violations of due process does not alter the fact that the complaint targets the Commission's rules. "Congress did not intend the framing of a constitutional challenge . . . to grant a district court jurisdiction over an otherwise non-collateral claim." *Jarkesy*, 803 F.3d at 24.

MGM's claims are thus merely "the vehicle by which [MGM] seek[s] to reverse" the Commission's decisions to issue the Demand and to decline to disqualify Chair Khan. *Id*. at 23. Contrary to MGM's assertion (Pl.'s Opp. at 13), its fact bound claims are inextricably intertwined with the Commission's law enforcement investigation, under the Act, into MGM's data security practices. The claims concerning the Demand challenge MGM's operational status as a "financial institution" or "lender" under the Safeguards and Red Flags Rules. The claim concerning the disqualification of Chair Khan is likewise grounded in the apparent consequences of a data breach that required her to provide her credit card information on paper. And the claim concerning the scope of Rule 4.17 implicates the legal effects of the Demand under the Act. None of MGM's claims, therefore, can be reasonably deemed wholly collateral to the Act—the statute that provides the legal authority for the Commission's Rules of Practice, the MGM investigation, and the issuance of the Demand, and which sets out the judicial review process for these Commission actions.

*Third*, for essentially the same reasons, MGM is mistaken in asserting that the Commission has no expertise in resolving the claims at issue. *See* Pl.'s Opp. at 13-15. Even if framed as constitutional due process questions, MGM's claims all concern the construction and application of the Commission's own regulations—i.e., whether Commission rules sufficiently protect against

bias in conducting investigations; whether the Demand conforms to the rules governing the issuance and scope of civil administrative demands; and whether MGM's business operations and conduct render it subject to the Safeguards and Red Flags Rules. The Commission has substantial expertise in answering all these questions and it is entitled to significant deference in interpreting its own rules. *See, e.g.*, *Kisor v. Wilkie*, 588 U.S. 558 (2019) (affirming the *Auer v. Robbins*, 519 U.S. 452 (1997), rule of judicial deference to agency interpretation of its internal rules and regulations).

MGM's contention that its complaint "is not about the proper construction of the Commission's Rules of Practice," Pl.'s Opp. at 14, contradicts its own complaint allegations. *See* Compl. ¶¶ 66-129. Even MGM's claim concerning a purported "Commission's policy of refusing to hear challenges to the ethical conflicts of its Commissioners," Pl.'s Opp. at 14, is really a challenge to the scope of Rule 4.17 being limited to adjudicative and rulemaking proceedings.[1]

MGM draws a false dichotomy between, on the one hand, *Axon* and *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and, on the other hand, *Elgin* and *Thunder Basin*—arguing that the latter two concerned "customary disputes before an untainted administrative decisionmaker," while the former two addressed "the constitutionality of an agency's processes and procedures themselves." Pl.'s Opp. at 15. In fact, all four cases turned on the Court's analysis of what have come to be known as the *Thunder Basin* factors, and particularly the prospects for meaningful judicial review of the claims at issue within the relevant statutory review scheme. *See Axon*, 598 U.S. at 185-189 (explaining Court's reasoning in prior decisions); *see also id.* at 191 ("Judicial review of Axon's . . . structural constitutional claims would

---

[1]       *See supra* note 2, explaining that the Commission in fact considered and rejected the merits of MGM's disqualification petition.

come too late to be meaningful"); *Elgin*, 567 U.S. at 21 (claims "can receive meaningful review" because "the Federal Circuit has authority to consider and decide petitioners' constitutional claims"); *Free Enter. Fund*, 561 U.S. at 490-91 (statutory scheme does not provide "a 'meaningful' avenue of relief" because the firm's only route to judicial review is to "*incur* a sanction"); *Thunder Basin*, 510 U.S. at 215 ("petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals"). Here, as discussed above, MGM can secure meaningful review of all its claims in the enforcement action pending in Nevada.

At any rate, MGM is wrong to characterize *Axon* and *Free Enterprise Fund* as concerning "an agency's processes and procedures." Pl.'s Opp. at 15. Both of those cases concerned the constitutionality of the structure of the agency at issue, not merely the constitutionality of those agencies' internal procedures. *See Axon*, 598 U.S. at 180-82; *Free Enter. Fund*, 561 U.S. at 487-88. In contrast, MGM here challenges not the structure of the Commission but the application of Commission rules to the factual circumstances of this case.

### C.   Post-*Axon* Authorities Support the Commission's Position.

Both the D.C. and Tenth Circuits have held that *Axon* is a "narrow exception" to the review schemes of the Federal Trade Commission Act and the SEC's organic statutes that is limited to "facial challenges to the constitutional structure of administrative agencies[.]" *Loma Linda*, 2023 WL 7294839, at *11; *Leachco*, 103 F.4th at 758 (*Axon* concerned the "constitutionality of those agencies' structure"). That *Loma Linda* "involved a different agency and a different statute," Pl.'s Opp. at 18, is beside the point. Likewise irrelevant is the "procedural posture" of *Loma Linda*. *Id*. The relevance of *Loma Linda* to this case is the D.C. Circuit's reading of *Axon*, which applies with particular force to this case because MGM's claims concern the same statutory review scheme as in *Axon*. Further, MGM's attempt to distinguish *Leachco* also fails. *See* Pl.'s Opp. at 19. The

Tenth Circuit accurately described both the claims in *Axon* and the Supreme Court's reasons for finding an exception to the Act's review scheme for constitutional challenges to the Commission's structure. 103 F.4th at 758.

MGM is also wrong that *Tennessee v. Department of Education*, 104 F.4th 577 (6th Cir. 2024), "directly counters the narrow interpretation of *Axon* advocated by the FTC." Pl.'s Opp. at 17. *Tennessee* concerned pre-enforcement review of agency regulations under Title IX. *See* 104 F.4th at 603. Unlike the Act, *see Axon*, 598 U.S. at 185, "Title IX contains no comprehensive enforcement scheme." *Tennessee*, 104 F.4th at 603. Thus, the Sixth Circuit, after analyzing Title IX's review provision, concluded that it "doesn't bar judicial review" of the claims at issue there. *Id*. at 605. The Sixth Circuit's analysis says nothing about *Axon*'s construction of the review scheme in the Act and how that applies here. *Tennessee* is simply inapposite. The same is true of the district court cases MGM cites, *see* Pl.'s Opp. at 17, which concern review of pre-enforcement claims under statutory review schemes other than the Act.[2]

## II.   <u>MGM's Complaint Fails to State a Claim Upon Which Relief Can Be Granted.</u>

Setting aside the threshold issues raised above, MGM's complaint also fails on the merits under Rule 12(b)(6). *See* Def.'s Mot. at 16-28. MGM's opposition fails to identify a cognizable cause of action under either the APA or the Fifth Amendment, and it fails to show that the complaint's allegations in fact state a plausible claim for relief. Dismissal is therefore warranted.

---

[2]     *See Wagafe v. Biden*, Civ. A. No. 17-0094, 2024 WL 2274349, *2, 4 (W.D. Wash. May 20, 2024) (review under the Immigration and Nationality Act); *Texas v. Cardona*, Civ. A. No. 23-0604, 2024 WL 3658767, at *24 (N.D. Tex. Aug. 5, 2024) (review under Title IX); *Texas v. Brooks-LaSure*, 680 F. Supp. 3d 791, 806-07 (E.D. Tex. 2023) (review under the Social Security Act); *Chung v. Arthur J. Gallagher & Co.*, Civ. A. No. 21-1650, 2023 WL 5486954, at *5 (N.D. Ill. Aug. 24, 2023) (review under ERISA). The only other case cited by MGM, *Su v. Kwiat Eye and Laser Surgery, PLLC*, No. 22-0264, 2023 WL 4847315 (N.D.N.Y. July 28, 2023), is in fact a government enforcement action under the Occupational Safety and Health Act. *Id*. at *1.

### A.  Neither the APA nor the Fifth Amendment Supplies MGM with a Viable Cause of Action.

MGM can secure relief in federal court only if a source of law grants it a cognizable "cause of action." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). MGM's opposition invokes the APA and the Fifth Amendment but neither supplies it with a viable cause of action here.

*First*, while the APA provides "a generic cause of action in favor of persons aggrieved by agency action," *Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006), the APA limits such review to either (1) "[a]gency action made reviewable by statute," on which MGM does not rely, or (2) "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1208 (D.C. Cir. 2021).

MGM is mistaken in claiming that "the conduct raised in MGM's Complaint qualifies as 'final agency action' for APA purposes." Pl.'s Opp. at 20. As MGM acknowledges, *id.*, an action is "final" only where it marks the "consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Army Corps. of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). No Commission action here satisfies these conditions. The Commission's issuance of the Demand, denial of MGM's petition to quash, and denial of MGM's petition to disqualify Chair Khan are not actions that "determine" MGM's "rights or obligations," *id.*, because—as discussed above—the Demand is not self-enforcing. For similar reasons, no "legal consequences will flow" from any of these actions, so none can be deemed "final" under the APA. *Id*.

The principal case that MGM relies on, *Sackett v. EPA*, 566 U.S. 120 (2012), illustrates the flaw in MGM's arguments. As MGM itself describes that case, "the EPA issued an order" asserting jurisdiction, finding a law violation, and requiring the Sacketts to take the definitive actions of

restoring the property at issue and giving the agency access to the property, documents, and information. Pl.'s Opp. at 21-22 (citing *Sackett*, 566 U.S. at 124-26). But no such order exists here. As discussed above, the Commission's issuance of the Demand, determination not to withdraw the Demand (although Commission staff altered its terms after discussions with MGM, *see* Def.'s Mot. at 6), and decision not to disqualify Chair Khan from participation in the investigation did not require MGM to do anything.

MGM misses the point in trying to distinguish *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980), on the ground that MGM "does not challenge the factual basis for the FTC's investigation." Pl.'s Opp. at 23. *Standard Oil* explained that the issuance of an agency document that does not determine the rights and obligations of parties is not reviewable under the APA. *Standard Oil*, 449 U.S. at 239. The Court was analyzing the issuance of a Commission complaint, but the issuance of the Demand is even less determinative of any rights and obligations; it does not even require an answer from MGM. *See, e.g.*, *Gen. Fin. Corp. v. FTC*, 700 F.2d 366, 368, 371 (7th Cir. 1983) (Commission's issuance of civil investigative demands is not final agency action even where agency denies petitions to quash the demands); *Blue Ribbon Quality Meats, Inc. v. FTC*, 560 F.2d 874, 875 (8th Cir. 1977) (same).

Equally importantly for APA review purposes, MGM fails to explain why it cannot press all its claims in the enforcement action pending against it in Nevada—thus failing to show that it has "no other adequate remedy in a court." 5 U.S.C. § 704. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017) (whether an alternative adequate remedy exists is "an element of the cause of action created by the APA."). MGM's only defense to this statutory requirement is that, at the time of its complaint, the enforcement action had not been filed. Pl.'s Opp. at 23-24. But before that enforcement action, MGM suffered no harm whatsoever and thus could not show

it was even "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. In sum, before the court proceedings to compel compliance with the Demand, MGM had no APA cause of action because it suffered no injury. With the enforcement action now pending, MGM has no APA cause of action because, among other things, it has an "other adequate remedy in a court." *Id*. § 704.

*Second*, MGM does not have a cognizable cause of action under the Fifth Amendment. Congress intended the APA to be the "exclusive" means of reviewing challenges to the conduct of administrative agencies. *Gen. Fin.*, 700 F.2d at 368. Otherwise, plaintiffs could evade the APA's review conditions—like finality and the absence of adequate remedy elsewhere—simply by invoking the Constitution directly as an alternate cause of action. Here, MGM brought the exact same claims, seeking the exact same remedies, under both the APA and the Fifth Amendment. *See* Compl. ¶ 25. Because MGM's complaint fails to satisfy the APA's review conditions, this Court cannot review any of MGM's claims. "Private rights of action to enforce federal law must be created by Congress." *Sledge v. District of Columbia*, 869 F. Supp. 2d 140, 143 (D.D.C. 2012) (Bates, J.) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). Judicial creation of a cause of action for MGM to bring those same claims under the Fifth Amendment would contravene Congress's command, contrary to the separation of powers. As the Supreme Court has instructed, "[w]hen a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis." *Zigler v. Abbasi*, 582 U.S. 120, 135 (2017); *accord Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 973 F.3d 121, 123 (D.C. Cir. 2020). And, MGM is incorrect that *Zigler* and *Sledge* are "of little value here" because they involved damages. Pl.'s Opp. at 25. The nature of the remedy sought does not dilute the separation-of-powers analysis in these cases.

MGM's opposition fails to address the exclusive nature of the APA's cause of action. Contrary to MGM's suggestion (Pl.'s Opp. at 25), there is nothing "circular" in the Commission's position that the APA provides the "exclusive" cause of action for MGM and the statutory conditions for judicial review that must be met. *See* Def.'s Mot. 20-22 (explaining that where Congress has supplied a statutory cause of action, the courts will not infer a Constitutional one that would conflict with any limitations that Congress placed on the statutory one). In relying on the proposition that "equitable relief of the kind MGM seeks here is a proper means of enforcing constitutional rights," Pl.'s Opp. at 24, MGM confuses the remedy it is seeking with the legal basis for the claims it is alleging. The remedy cannot supply the "cause of action"—i.e., "the legal authority (e.g., the APA) that permits the court to provide redress for a particular kind of 'claim.'" *Trudeau*, 456 F.3d at 188 n.15. That "MGM seeks injunctive, declaratory, and other equitable relief," Pl.'s Opp. at 24, has no bearing on whether its complaint identifies a cognizable cause of action.

MGM is also wrong that the Commission's cited authorities "cannot be squared with the Supreme Court's more recent decisions in *Axon* and *Free Enterprise Fund*." Pl.'s Opp. at 25. Those cases did not concern agency investigations. *Id*. Both concerned agency structures that allegedly inflicted constitutional harm on the petitioners for which, the Court determined, petitioners had no other meaningful review avenue. *See Axon*, 598 U.S. at 180-82; *Free Enter. Fund*, 561 U.S. at 487-88. Here, MGM is not challenging the Commission's structure and it did not suffer any harm from the Commission's issuance of the Demand or the denial of its petitions. Moreover, MGM has a readily available avenue for meaningful judicial review of its claims in the Nevada enforcement proceeding.

**B.**      **MGM's Complaint States No Plausible Claims for Relief.**

In addition to failing to identify a cognizable cause of action, MGM's complaint allegations fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1.      MGM's Allegations Regarding Rule 4.17 Fail to State a Due Process Claim.

MGM fails to allege a plausible claim in Count I of the Complaint, which asserts that the applicability of Commission Rule 4.17 to only adjudicatory and rulemaking proceedings violates due process. *See* Compl. ¶¶ 104-111. To begin, MGM is demonstrably wrong in claiming that "there is simply no mechanism for investigation targets to challenge the participation of an otherwise conflicted Commissioner." Pl.'s Opp. at 27. Commissioners are subject to various ethics laws and regulations governing the conduct of officials and employees of the Government. *See* Def.'s Mot. at 25. Indeed, MGM admits that its petition for the recusal or disqualification of Chair Khan was "premised upon such ethics laws and guidelines, including the ABA Model Code of Professional Responsibility, federal recusal laws, and the FTC's own ethical guidelines for its employees." Pl.'s Opp. at 27 n. 6 (citing Compl. Ex. 3, at 7, 10). For its part, the Commission explained that although MGM's petition was not filed in conformity with the Commission's procedures, the Commission nonetheless considered MGM's arguments and found them to be without merit. *See* Compl. Ex. 4, at 16 n.18. Thus, the absence of a Commission-specific disqualification rule covering investigations has not caused MGM any injury-in-fact, and cannot form the basis for a due process claim for lack of Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (describing Article III's injury-in-fact requirement); *accord Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) ("[W]here a plaintiff 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury.'") (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).

MGM misplaces its reliance on Commission Rule 4.17 in arguing that Chair Khan's participation in the agency's decision to reject her disqualification violated an express Commission requirement. *See* Pl.'s Opp. at 28. Rule 4.17, by its express terms (*see id*. at 28 n.7), applies only to adjudicatory or rulemaking proceedings, neither of which were at issue for MGM's disqualification petition. Chair Khan's participation thus did not violate any Commission rules.

The Commission indisputably has considered and rejected the merits of MGM's disqualification petition. That MGM disagrees with the Commission's ultimate decision does not state a claim of due process violation.

>    2.    MGM's Allegations Regarding Chair Khan Fail to State a Potential Bias <u>Claim.</u>

MGM has also failed to state a plausible claim in Count II of its complaint, which alleges that Chair Khan should have been disqualified from participating in the MGM investigation. *See* Compl. ¶¶ 112-118. The claim rests on the allegation that "Chair Khan and an unnamed senior aide were guests at one of MGM's Las Vegas properties during the [MGM September 2023 cyber security] attack and were inconvenienced by MGM's incapacitated IT systems," by having "to write down their credit card information on a piece of paper." *Id*. ¶ 4. MGM's opposition fails to explain how this public knowledge of MGM's data breach and its IT consequences, *see id*. (MGM citing news reports of Chair Khan's experience), could cause Chair Khan to be biased in the conduct of the Commission's investigation into MGM's data security practices.

MGM also asserts that Chair Khan is "the most high-profile witness to the events at issue." Pl.'s Opp. at 29. But those "events at issue"—i.e., the incapacitation of MGM's IT systems following the data breach—were witnessed by all of MGM's hotel guests at the time. MGM does not explain why Chair Khan's potential testimony would be of any special value. As the

Commission noted, "[t]hat Chair Khan learned of the breach while an MGM hotel guest is not legally significant." *Id.* Ex. 4, at 16 n.18.

MGM likewise has not shown that Chair Khan has "personal interests" in the outcome of the investigation. *See* Pl.'s Opp. at 30. Although the Complaint alleged that Chair Khan is "a potential civil plaintiff" in pending class actions against MGM (Compl. ¶ 9), Chair Khan's own personal data was not exposed by that breach, and she had no legal entitlement to provide her credit card information in any particular format (*see* Def.'s Mot. at 24). At any rate, Chair Khan has "voluntarily elect[ed] to waive any interest that she may have in any relief resulting from the filed class actions or any substantially related matter—thus extinguishing any potential financial conflict arising from these actions." Compl. Ex. 4 at 16 n.18.

MGM clutches at straws in speculating that Chair Khan could be biased because she may feel "public pressure" to "do something." Pl.'s Opp. at 30. Given her role as Chair of the government agency in charge of enforcing consumer protection laws, "public pressure" to "do something" about potential law violations is a feature of her job, not grounds for a claim of bias. Government officials "are necessarily permitted to be zealous in their enforcement of the law." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980) (cleaned up).

MGM is also mistaken that the Commission and the Court are "bound" by MGM's "plead[ing] that Chair Khan suffered an intractable ethical conflict." Pl.'s Opp. at 31. Following *Iqbal* and *Twombly*, the law requires the Court, on a 12(b)(6) motion, to take as true the complaint's factual allegations, "while also disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Galvin v. Del Toro*, 586 F. Supp. 3d 1, 9 (D.D.C. 2022) (citing *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123 (D.C. Cir. 2017)). The only factual allegation in MGM's complaint is that Chair Khan stayed

at an MGM hotel after a data breach incident and had to give her credit card information on paper. Compl. ¶ 4. Whether that allegation amounts to a due process claim for potential bias is a legal conclusion that the Court need not credit at this stage.

Lastly, MGM is also misguided in claiming that under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Commission's consideration of MGM's petition to quash is "a quintessentially judicial function." Pl.'s Opp. at 31. As explained above, a petition to quash is an ex parte process most analogous to seeking to convince a prosecutor to drop an investigation or a litigant to withdraw a discovery request.

       3.     MGM's Allegations of an Arbitrary Demand Response Time Fail to State a Claim.

MGM has also failed to state a plausible claim for relief in Count III of its complaint, which asserts that the Demand's response deadline "deprives MGM of due process and equal protection." Compl. ¶ 121. MGM's opposition characterizes this claim as "the fruit of the poisonous tree" of MGM's due process bias claims and argues that due process requires a longer response time. Pl.'s Opp. at 33. First, contrary to MGM's allegation, the Demand's response deadline was not "just 11 days," Compl. ¶ 120, but in fact no fewer than seventy-seven days after service (*see* Def.'s Mot. at 26)—a fact that MGM's opposition fails to address, thereby conceding it. *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (if a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded" (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

MGM's claim also rings hollow given that when Commission staff contacted MGM's counsel to set out a compliance plan following the Commission's denial of MGM's petition to quash, MGM's counsel made it clear that MGM had no intention of complying with the Demand

at all—no matter the deadline. *See* Petition to Enforce (ECF No. 2) ¶¶ 14-16, Ex. 12, *FTC v. MGM Resorts Int'l*, No. 24-1112 (D. Nev. June 17, 2024). Having already decided not to comply with the Demand regardless of any deadline, MGM cannot now complain about having an insufficient response time.

4.    MGM's Allegations Concerning Application of the Safeguards and Red Flags Rules Fail to State a Claim.

MGM's opposition fails to show that its allegations in Count IV of the Complaint—that the Demand's reliance on the Safeguards and Red Flags Rules violated the Fifth Amendment, Compl. ¶¶ 125-129—state a plausible claim for relief. MGM's only argument in support of this claim is a naked assertion that "MGM does not fit within any of the enumerated categories of actors to which those Rules apply." Pl.'s Opp. at 33. But that assertion does not answer the Commission's showing that whether those Rules apply to MGM's business operations is a valid subject of the investigation and thus a valid topic of the Demand. *See* Def.'s Mot. at 27-28. MGM cannot "resist an administrative subpoena on the ground that [the Commission] lacks regulatory jurisdiction if the subpoena is issued at the investigational stage." *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001) (internal quotation marks and citations omitted). Thus, the Commission "has the power to obtain the facts requisite to determining whether it has jurisdiction over the matter sought to be investigated." *Fed. Mar. Comm'n v. Port of Seattle*, 521 F.2d 431, 434 (9th Cir. 1975); *accord XYZ Law Firm v. FTC*, 525 F. Supp. 1235, 1237-38 (N.D. Ga. 1981). MGM's opposition is silent on this issue.

## III.   Declaratory Relief Is Inappropriate.

Finally, even if this Court had jurisdiction over MGM's claims, and even if MGM's claims were well-pled, declaratory relief is inappropriate here because (1) "the same issue is pending in litigation elsewhere," and (2) this action is merely a vehicle to attack the later-filed enforcement

action pending in Nevada. *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015); *accord POM Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 77-80 (D.D.C. 2009). *See* Def.'s Mot. at 28-31. All of MGM's claims and arguments here can be raised in the Commission's enforcement petition in the District of Nevada, which MGM here expressly seeks to forestall, *see* Compl. at 19 (MGM seeking to enjoin "enforcing the [Demand]"). MGM's opposition fails to show otherwise. That MGM also seeks injunctive relief, *see* Pl.'s Opp. at 34, does not negate the inappropriate nature of this declaratory action. Injunctive relief can be granted here only if the Court decides to hear the case and grants the declaratory relief that MGM seeks.

That this is merely an attempt to thwart the enforcement action is evident not only in MGM's sought remedy, *see* Compl. at 19 (MGM seeking to enjoin "enforcing the [Demand]"), but also in MGM's failure to explain why it cannot raise its claims in that action. MGM's only response—that MGM brought this action before the enforcement case was filed, Pl.'s Opp. at 35—highlights the impropriety of this action. Courts "take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff.'" *POM Wonderful*, 894 F. Supp. 2d at 45 (quoting *Swish Mktg.*, 669 F. Supp. 2d at 78); *accord Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 979 F. Supp. 2d 104, 118 (D.D.C. 2013). Indeed, as explained above, before the enforcement action was filed, MGM lacked the standing requirement of injury-in-fact to bring this case. As this Court has noted, "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment." *Gov't Emps. Ins. Co. v. Rivas*, 573 F. Supp. 2d 12, 15 (D.D.C. 2008).

MGM's arguments concerning the *Hanes* factors also lack merit. *See Hanes Corp. v. Millard*, 531 F.2d 585 (D.C. Cir. 1976); *see also* Def.'s Mot. at 29-31. The D.C. Circuit has identified a non-exhaustive list of "factors relevant to the propriety of granting a declaratory judgment," including "whether it would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of 'procedural fencing'; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided." *Hanes*, 531 F.2d at 591 n.4.

First, MGM's "procedural fencing" is evident in its seeking to "enjoin" the Demand's enforcement proceeding. *See* Compl. at 19. Additionally, MGM is wrong in asserting—with no explanation or support whatsoever—that "[o]nly this Court, in this proceeding, can grant the full constitutional relief that MGM seeks." Pl.'s Opp. at 36. In fact, as noted above and discussed further below, the District of Nevada is fully empowered to adjudicate all defenses to MGM's compliance with the Demand, including MGM's claims here.

Contrary to MGM's contention, *see* Pl.'s Opp. at 36, neither *Axon* nor *Free Enterprise Fund* establishes that "subjection to an unconstitutional investigation is a here-and-now injury." Pl.'s Opp. at 36. As noted above, both cases concerned the constitutionality of agency structure, not the constitutionality of particular agency actions. *See Axon*, 598 U.S. at 180-82; *Free Enter. Fund*, 561 U.S. at 487-88. Here, MGM's claims concern the Commission's issuance of the Demand and the Commission's denial of MGM's petitions to quash and to disqualify Chair Khan, and the scope and application of the specific Commission rules underlying those actions—not the constitutional structure of the Commission itself. *See* Compl. ¶¶ 66-129.

Finally, MGM is wrong in suggesting, in a passing footnote, that it is somehow constrained in its ability to raise its current claims in the Nevada proceeding. *See* Pl.'s Opp. at 37 n.9. The Commission's motion for a show cause order in that proceeding expressly requested that the court "provide sufficient time for the Commission to serve the order and for [MGM] to prepare a response." Enforcement Pet., Mot. for an Order to Show Cause (ECF No. 3), at 1. The proposed show cause order in turn provides that "any opposition to the Petition [] will be considered at the hearing on the Petition." *Id.*, Proposed Order to Show Cause (ECF No. 3-1), at 2. What MGM mischaracterizes as "prior permission" requirements limiting its defenses (Pl.'s Opp. at 37 n.9) are in fact standard pretrial management tools such as court notices, witness lists, testimony-summary affidavits, and pleading deadlines, *see* Proposed Order to Show Cause, *supra*, at 2—which courts may employ as they deem appropriate in a proceeding to enforce an administrative subpoena. *See* Fed. R. Civ. P. 81(a)(5). MGM is not precluded from raising even new objections to the Demand, provided it has "an explanation as to why such objections were not made . . . to the Commission." Proposed Order to Show Cause, *supra*, at 2.

In sum, because MGM has in the Nevada enforcement action a readily available proceeding in which to raise all its claims here, this Court should decline to hear this case and dismiss it.

*     *     *

**CONCLUSION**

For the reasons set forth above and in the Commission's motion to dismiss, this action should be dismissed with prejudice.

Dated: September 6, 2024            Respectfully submitted,
      Washington, DC

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:      /s/ *Brenda González Horowitz*
      BRENDA GONZÁLEZ HOROWITZ
      Assistant United States Attorney
      601 D Street, NW
      Washington, DC 20530
      (202) 252-2512

*Attorneys for the United States of America*

OF COUNSEL:

Anisha Dasgupta
General Counsel

Michele Arington
Assistant General Counsel

Imad D. Abyad
Attorney

*Federal Trade Commission*